No. 20399.

Robert Thompson *v.*
The People of the State of Colorado.
(399 P.2d 776)

Decided March 8, 1965.

Arthur S. Bowman, for plaintiff in error.

Duke W. Dunbar, Attorney General, Frank E. Hickey, Deputy, John P. Moore, Assistant, for defendant in error.

*En Banc.*

Mr. Justice Moore delivered the opinion of the Court.

Plaintiff in error, to whom we will refer as the defendant, was found guilty of the crime of first-degree rape. The cause originated in the district court of Gunnison county upon the filings of an information in which it was alleged that the defendant:

"* * * did feloniously wilfully and forcibly make an assault upon one Kitty Sue Keltz, a female person not then and there his wife, and did then and there feloniously, violently forcibly and by threats of immediate and great bodily harm to her from him, accompanied by apparent power of execution, and against her will, she having resisted and her resistence having been over-

come by force, violence and said threats of immediate and great bodily harm, did forcibly rape and know her, the said Kitty Sue Keltz, and that Alfred Keller did then and there wilfully and feloniously stand by and aid, abet and assist the said Robert Thompson in perpetrating the aforesaid crime of rape, against the said Kitty Sue Keltz, contrary to the form of the Statute * * *."

Upon the entry of pleas of not guilty by Thompson and his co-defendant Keller, a motion for severance was filed by each defendant, each of which was denied. Alfred Keller was found not guilty of the crime charged against him. The jury returned a verdict finding the defendant guilty as charged and the trial court entered judgment that he serve a term of not less than seven nor more than fourteen years in the state penitentiary.

The argument of counsel for plaintiff is presented to this court under eight separate captions as follows:

"A. The Court erred in denying defendant's motion for separate trial.

"B. The Court erred in closing trial to the public.

"C. The Court erred in refusing to set aside verdict as contrary to law and evidence.

"D. The Court erred in instructing the jury.

"E. The Court erred in striking testimony of defendant's character witness.

"F. The Court erred in not declaring a mistrial upon jury's return for further instructions.

"G. The Court was arbitrary and capricious in denying probation.

"H. The Court was arbitrary and capricious in imposing an excessive and unwaranted punishment."

The only arguments warranting discussion are presented to this court under Sections "B" and "D." A careful study of the record clearly reveals that the other assignments of error are without merit.

We consider first the argument of counsel that the trial court erred "in closing trial to the public." In this connection the record discloses the following: At the

outset of the trial, and before a jury was impaneled, the prosecuting attorney (Mr. Knous) addressed the court as hereinafter set forth, and the following proceedings occurred:

"If your Honor please, I move at this time that spectators who have no legitimate purpose to be in the courtroom be excluded during the trial. This is a rape case. There will be certain medical testimony, and also testimony of the prosecuting witness that I think would be such that idle spectators should not be permitted in the courtroom, especially in view of the fact that the alleged victim, the prosecutrix, attended Western State College here, and there might be certain college students that have some interest in this matter. In my opinion, it is the type of case where the Court could properly exclude spectators who have no special reason for listening to the trial.

"THE COURT: Will you give the Court a brief statement of the nature of the evidence is that might be introduced?

"MR. KNOUS: The prosecutrix, of course, will testify concerning the alleged rape and go into some detail, and the two medical doctors will testify to some extent concerning female anatomy, and by that I refer to the hymen and vagina and matters such as that.

"THE COURT: Will there be any evidence introduced on either side concerning the removal of any clothes?

"MR. KNOUS: Yes, the prosecuting witness will testify as to that.

"THE COURT: To what extent?

"MR. KNOUS: Virtually all of her clothes, your Honor.

"THE COURT: How old is this girl?

"MR. KNOUS: And there also might be some testimony concerning obscene language in this particular case, four-letter words.

"THE COURT: What is the age of this girl?

"MR. KNOUS: The girl is 20 at this time.

"THE COURT: And what about the age of the boys?

"MR. KNOUS: One boy, I believe, is 22. I don't know what the other boy's age is.

"THE COURT: As I understand, there were two boys, the two defendants, and the two of them were present when the alleged rape was to have taken place, how old is the other boy?

"MR. KNOUS: The girl will be 21 in January, this month.

"MR. BRATTON: The other boy was 20 on the 24th of December.

"MR. KNOUS: As I understand, the girl will be 21 in January, this month, but I do think that there would be quite a number of students here at the college who might be interested in being present during the trial since all of the parties defendants and the girl involved are known here in Gunnison.

"THE COURT: I assume that the attorneys for the two defendants have discussed this among yourselves, do you care to make, to advise the Court as to your position on this motion?

"MR. KLINGSMITH: Your Honor, the defendant Robert Thompson strongly objects to an exclusion of the public from this trial. Article II, Section 16 of the Constitution of Colorado guarantees to defendants in a criminal trial the right to a public trial.

"THE COURT: I am familiar with that, of course, but do you consent that it is in the sound discretion of the Court?

"MR. KLINGSMITH: I think that is true. I think the Court does have the discretion, whether to exclude some or all of the spectators from a trial, but I want to point out the Constitutional guarantee which we believe should not be lightly considered by the Court, but on the other hand, the Court should only in the most serious of instances exclude the public from a trial. Now, Mr. Knous in his statement said that idle spectators who have no business at the trial should be excluded. We wish to point out that the public, your Honor, the public's pres-

ence at a trial has a very salutory and beneficial effect. By that I wish to point out that it is the public's concern. It is the public's business. After all, it is the public who is the plaintiff in this case, and they are entitled to watch the procedure that is carried on in the courtroom, and it is not anything that should be lightly denied to the public. Now, from the point of view of the defendants, we feel in this case particularly there are many witnesses who might be more likely to exaggerate or color or perhaps stretch their story a little bit if it is more or less a closed, private proceeding than they would be in the white glare of publicity, if you will, were shining on this trial. We strongly feel that the rights of our client Robert Thompson here would be seriously prejudiced if many of these witnesses had the feeling that this was a private affair and if their testimony is not tested by the fact that it were given in public.

"THE COURT: By the same token, do you agree with me that under certain circumstances insofar as the delicacies of certain testimony is concerned, especially by the victim, that she might be inclined to give a little more truthful story of some of the sordid details that she might unravel if the general public was excluded.

"MR. KLINGSMITH: The way we look at it is, your Honor, we think that the alleged victim would be considerably more likely to stay with the truth if the public were present. Now, I think everybody considers strongly her feeling in this case, but we wish to call the Court's attention to the right and liberty of our client Robert Thompson, that is to say, he stands, as we all know, a chance of being sentenced to the penitentiary from three years to life, and when his right to an open trial, his right to a fair trial, and his rights to a fair and full disclosure of the facts are considered as against some possible embarrassment to her, we think that his rights are in this particular instance, his rights to have this thing made public, far outweigh the slight embarrassment, that additional embarrassment, that may be caused her

by having a few more interested citizens, not idle spectators, present at this trial.

"THE COURT: Of course, you will agree, I am sure, with this statement. The ultimate object in the case is to see that justice is done, regardless of the prosecution's alleged victim, and regardless of the defendants. I don't quite understand just how excluding the general public from the courtroom during the trial, I don't see how it would jeopardize the rights of your client, if all of the evidence was in which the parties have a right to put in which the people themselves would testify to, how that would injure the rights of your client.

"MR. KLINGSMITH: We think, your Honor, that statements are going to be made in this trial, in fact, we know that conflicting statements are going to be made. We know that some of these statements are not going to be true, and we feel that some of these untrue statements which I feel are going to be made, will be closer to the truth if the public is here listening to them than if these witnesses get the idea that this is a chamber proceeding than they would if the white glare of publicity were given to their remarks. We think that this is something not to be lightly taken away from the defendants, and we think that the slight additional embarrassment which might result, it would be much better to have a few extra people in this courtroom, and that the slight embarrassment the prosecuting witness might be put to is nothing compared with the rights that are being taken away from the defendants by having a closed proceeding. As far as the testimony of the doctors is concerned, certainly they are going to be embarrassed by this publicity. There are going to be persons affected by it in the whole courtroom, Mr. Knous, and concerning the protection of the public, that is away off base, because, of course, there is nothing in the law that says the public should be protected from listening and, of course, that could be the only possible reason for excluding the public from the testimony of the doctors,

because certainly it is not going to affect them one way or another as to who is listening to their testimony."

The court reserved a ruling until after a jury had been selected and sworn, thereupon it ruled as follows:

"THE COURT: Let the record show that with respect to the motion made by the district attorney yesterday concerning the exclusion of all spectators in the courtroom, that I have given this matter considerable thought and consideration. I was quite interested all day yesterday as to the type of people who attended the sessions. Most of the spectators were those who were on the jury panel. However, I observed numerous younger people in the audience, one of whom at least I recognized as a college student. This student was with others, other young people, and not knowing whether or not they were from the college, of course, I am not in a position to state what their business or occupation might be, or whether they were students. However, I feel that in this type of case and the type of testimony that is going to be introduced and elicited from the witnesses, particularly the prosecuting witness or the accuser, that it would serve no good purpose to permit the public generally to be in the courtroom during the course of trial. I realize that the trial should be public. I have no thought of excluding the press. I have no thought of excluding the relatives or others who are primarily interested in the actual case, relatives of the parties themselves, or the prosecuting witness. Therefore, I am granting the motion under these conditions. Number one, that all near relatives within at least the third degree of both the defendants and the prosecuting witness be permitted to remain in the courtroom, and that all members of the press be permitted to remain in the courtroom and, of course, all court officials, necessary police officers, bailiff, and attorneys at law. All others shall be excluded during the course of the trial.

"MR. KLINGSMITH: How about employees of the attorneys' offices?

"THE COURT: If the employees of the attorneys have any occasion or reason to be in the courtroom to assist the employers with such as delivery of papers, bring books, etc., back to the office, they may come in and out of the courtroom, but as spectators only, they will be excluded like everyone else.

"MR. WHITTINGTON: Will this ruling exclude friends of the parties who have provided transportation?"

"THE COURT: This will exclude friends of the parties. When you start talking about friends, about friendship, that covers a broad area, as to who must or might be a friend and who might not be a friend, but they will be excluded unless, as I say, they are relatives. * * *"

The attorney general relies on *Benedict v. People,* 23 Colo. 126, 46 Pac. 637, as supporting his contention that the defendant was not denied his constitutional right to a "public trial." In that case it was said, inter alia, that:

"In a criminal case the trial must be public, not secret. But a public trial does not necessarily contemplate that every person whose morbid curiosity for indecent details draws him thither shall have that curiosity gratified by being permitted to be present in the court room to listen to the recital of disgusting facts."

However the *Benedict* case presented a far different factual situation than is shown in the instant case. In that case, the only showing in support of the claim that the accused was denied a public trial appeared in the form of "affidavits of some of the court officials, which the clerk certifies were filed in the case, in which it is stated that the court made an order excluding from the court room during the progress of the trial all persons except members of the bar, officers of the courts, students at law, and witnesses in the case."

It is axiomatic that an order of the court which forms the basis of an assignment of error is not properly before an appellate court for consideration when it is presented in the form of an affidavit of some person who claims to have heard the order made. Court orders are

a matter of record and the record as made must be certified to the appellate court. Moreover in *Benedict* there is no showing of any kind that the defendant made any objection to the claimed order of exclusion. With reference to this point the opinion states:

"* * * no attempt is made by the defendant to show that any objection to the order was made by him at the time, and in the absence of a contrary showing, under the general rule that the proceedings of a court of record are presumed to be regular, we are justified in assuming that it was made at the request, or with the consent, of the accused himself."

■ Article II, Section 16, of the Constitution of Colorado provides, inter alia, that:

"In criminal prosecutions the accused shall have the right * * *; to have process to compel the attendance of witnesses in his behalf, and a speedy *public trial* by an impartial jury * * *." (Emphasis supplied.)

Substantially the same provision is to be found in the Sixth Amendment to the Constitution of the United States.

■■ We hold that under the facts disclosed by the record in this case the defendant was denied the constitutional right to a public trial. Many authorities might be cited in support of our conclusion. We think it sufficient to make reference to *United States v. Kobli*, 172 F.2d 919, in which will be found annotations to numerous decisions of courts of last resort throughout the nation, most of which we have read. We approve the opinion in the *Kobli* case, from which we quote as follows:

"* * * At the outset we note that it is not necessary for the appellant to show that she was in fact prejudiced by the action of the trial judge. If that action violated her constitutional right we agree with the Courts of Appeals of the Eighth and Ninth Circuits that a 'violation of the constitutional right necessarily implies prejudice, and more than that need not appear. Furthermore, it would be difficult, if not impossible, in such cases for

a defendant to point to any definite, personal injury. To require him to do so would impair or destroy the safeguard.'

*   *   *

"The narrow question which we have to decide, therefore, is whether the Sixth Amendment permitted such a general exclusion of all the members of the public from the trial of the defendant or whether, on the contrary, the trial judge's power of exclusion was limited to those members of the public for whom space was not available in the courtroom or whose conduct was such as to interfere with the administration of justice or who ought not in the interest of public morals to have been permitted to hear the testimony which was likely to be given. In other words, did the trial judge have power to exclude all members of the public except those having special concern with the trial or should his order of exclusion have been limited to those persons or classes of persons who should not for proper and specific reasons have been permitted to attend, leaving the courtroom door open for all other members of the public who desired to attend and for whom there were seats available in the courtroom?

"After mature consideration we have reached the conclusion, in accord with the present views of the two United States Courts of Appeals which have passed upon the precise question, that the Sixth Amendment precludes the general indiscriminate exclusion of the public from the trial of a criminal case in a federal court over the objection of the defendant and limits the trial judge to the exclusion of those persons or classes of persons only whose particular exclusion is justified by lack of space or for reasons particularly applicable to them. Moreover whatever may have been the view in an earlier and more formally modest age, we think that the franker and more realistic attitude of the present day toward matters of sex precludes a determination that all mem-

bers of the public, the mature and experienced as well as the immature and impressionable, may reasonably be excluded from the trial of a sexual offense upon the ground of public morals. In reaching our conclusion we are, of course, not passing upon the different situation which arises in a case, such as a prosecution for statutory rape, in which the prosecuting witness is of such tender years as to be seriously embarrassed in giving her testimony by the presence of spectators not concerned with the trial. It has been held that in such a case the trial judge in order to prevent a miscariage of justice may during the witness' testimony exclude all members of the public not directly concerned with the trial."

■ It is argued that the court erred in refusing to give an instruction tendered by the defendant, as follows:

## "INSTRUCTION NO. B

"The charge of rape made against the defendant, Robert Thompson, is by its nature a most heinous one and well calculated to create strong prejudice against the accused, and the attention of the jury is directed to the difficulty, growing out of the nature of the unusual circumstances connected with the commission of such a crime, in defending against the accusation of rape, though ever so innocent.

"The charge of rape is easily made and difficult to disprove; therefore, the testimony of the prosecutrix, Kitty Sue Keltz, should be examined with caution."

Whether such an instruction should be given in a case of this kind is a matter which rests largely in the sound discretion of the trial court. *Slocum v. People,* 120 Colo. 86, 207 P.2d 970. In the instant case we cannot say that there was an abuse of discretion by the trial court in refusing to give the instruction. The case of the People did not rest wholly upon the unsupported word of the prosecuting witness. In several relevant particulars her testimony was corroborated by admitted circumstances and evidence from other witnesses.

The judgment is reversed and the cause remanded for a new trial.

MR. JUSTICE MCWILLIAMS dissents.

MR. JUSTICE SCHAUER not participating.

MR. JUSTICE FRANTZ concurring:

I am in accord with everything that is said in the opinion of Mr. Justice Moore. However, I would make some observations which I believe give perspective to my concurrence. I am so motivated by the fact that a number of state appellate courts have, in my opinion, inverted the meaning of the constitutional right to a public trial.

Article II of the Constitution of Colorado is our Bill of Rights. Section 16 of the Bill of Rights provides:

"In criminal prosecutions, the accused shall have the right to * * * a speedy public trial . . ."

This is a substantial constitutional right guaranteed to one charged with crime and only to be waived by the accused.

There has been a tendency on the part of appellate courts to order exclusion of the public and to admit only certain persons to hear the trial of criminal cases where unsavory details may be brought out in the evidence. This is clearly an inversion of this important constitutional provision.

I am firmly convinced that a public trial means that the trial shall be open to the public and that exclusion, if necessary because of circumstances (such as the tender years of one who would like to hear a sensational case), should apply only to individuals properly excludable; that the converse should not be the case, i.e., the exclusion of the public and the admission of only certain persons to hear the trial.

Mr. Justice McWilliams dissenting:

I must respectfully dissent from that portion of the majority opinion which holds that Thompson was denied his right to a "public trial" as guaranteed by Article II, § 16 of the Colorado Constitution. In this connection Thompson makes no claim that he was denied any right guaranteed him by the United States Constitution, his only contention being that he was denied the "public trial" required by the Colorado Constitution.

There is a lack of judicial uniformity as to just what constitutes a "public trial." In 14 Am. Jur. p. 866, et seq. appears the following:

"The decisions are not in harmony on the question whether the court has a right to exclude the public or a part of the public from the courtroom during the progress of a criminal trial. According to some decisions it may not. According to others it may . . . .

\*    \*    \*    \*

"A defendant does not necessarily have to show on appeal that he was actually prejudiced on account of an invasion of his constitutional right to a public trial, because when such an invasion occurs the law presumes that he did not have a fair and impartial trial. However, it has been held not to be reversible error to exclude the spectators when there is no showing whatever that the defendant was prejudiced thereby or deprived of the presence, aid, or counsel of any person whose presence might have been of advantage to him."

Hence, the issue as to what constitutes a "public trial" and whether a trial is any less a "public trial" because a trial judge excludes spectators from the courtroom during a sex trial, for example, is one upon which there is diversity of judicial thinking. Accordingly, if this were a matter of first impression in Colorado, we would be free to adopt the construction which appeals to us as being more reasonable and logical. But this is *not* a matter of first impression in Colorado, as this Court has already

spoken on this matter in *Benedict v. People,* 23 Colo. 126, 46 Pac. 637. In that case this Court said:

"In a criminal case the trial must be public, not secret. But a public trial does not necessarily contemplate that every person whose morbid curiosity for indecent details draws him thither shall have that curiosity gratified by being permitted to be present in the courtroom to listen to the recital of disgusting facts."

In that same case we also held that there was no showing of any prejudice done the defendant by the order excluding all spectators from the courtroom, and that the burden of showing such prejudice "rests upon the one assigning it."

As I see it, the majority of this Court have this day overruled the *Benedict* case, not only as to just what constitutes a "public trial," but have also overruled that part of the *Benedict* case declaring that a defendant must show actual prejudice resulting from the exclusion order.

I recognize that the majority of this Court have attempted to distinguish the *Benedict* case from the one at hand, but in my view these distinctions are inconsequential in nature and in nowise detract from the fundamental rule enunciated in that case. In this regard it is of interest to note that the United States Court of Appeals, Third Circuit in *United States v. Kobli,* 172 F.2d 919, the authority primarily relied upon by a majority of this Court, cites the *Benedict* case in support of the following:

"Some state courts, however, have taken the further position that in cases involving sexual offenses it is permissible, and not in violation of the guarantee of a public trial to exclude the general public entirely from the courtroom, permitting, in addition to the court officers and jurors, only the parties involved in the trial, their counsel, witnesses, relatives and friends to be present."

I am in substantial agreement with this appraisal of the *Benedict* case as made in *United States v. Kobli, supra.*

My general thinking on this subject is found in *Reagan v. United States,* 202 F. 488, where the Circuit Court of Appeals, Ninth Circuit stated:

"We think the better doctrine is that it is not reversible error to exclude the spectators as was done by the order of the court in the case at bar, when there is no showing whatever that the defendant was prejudiced thereby, or deprived of the presence, aid or counsel of any person whose presence might have been of advantage to him. The constitutional provision for a public trial should be construed in a reasonable sense, and in view of the object thereby intended to be subserved. The mere denial of the literal right should not be held ground for reversing a judgment, unless it can be perceived that the defendant has been deprived of some benefit or advantage thereby.

"The only conceivable benefit the defendant might have been deprived of by the order of the court in this case was the presence in the courtroom of a crowd of idle, gaping loafers, whose morbid curiosity would lead them to attend such a trial, and the consequent embarrassment and annoyance their presence might cause to the unfortunate girl who was called upon to testify to the story of the defendant's crime and her shame. Of the deprival of that benefit the defendant has no legal ground to complain. The trial was not, by the order of the court, rendered a secret trial. In a sense it was still a public trial. In addition to the court and jury, there were present in the courtroom the officers of the court, the witnesses for the government and for the defendant, and the counsel for the respective parties, and no members of the bar were excluded. These constituted a sufficient number of the public to see that the plaintiff in error was fairly dealt with and not unjustly condemned."

Applying the result and the rationale of the *Benedict* case to the instant controversy, I am of the definite view that Thompson received a "public trial" and further that he has totally failed to show any prejudice resulting

from the exclusion order as entered by the trial judge. Most certainly this was not a "secret trial." The exclusion order permitted all to attend who had any real or legitimate interest to be present, including relatives to the third degree of both the victim and the defendant, as well as the press, of course. The order for all practical purposes excluded only those who were mere spectators, which apparently included some college students. I would hold that a trial is a "public trial" even though a trial judge on sufficient showing and by appropriate order excludes from the courtroom during a "sex trial" those who are mere spectators or only gaping sightseers. In the instant case I find no error in excluding from the courtroom all those persons who fall into this category, including the young college students, whose only interest in hearing a 20 year old girl tell just how the defendant forcibly raped her would be to satisfy their morbid curiosity or prurient longings.

I would affirm this judgment.