John B. Barnard, District Judge,
dissenting:
I respectfully dissent.
In view of the position I feel compelled to- take by the facts in this matter, and the nature of the right which I feel was clearly violated, some additional facts should be mentioned. After a trial to a jury, and after jury deliberations- consuming several hours over two days, October 6 and 7, 1967, a verdict of guilty was reached, which verdict was sealed and opened by the Court and judgment *229 entered thereon on October 9, 1967.
The facility in which the trial was conducted contained only enough seats to permit the prospective jurors to be seated in the courtroom, including the chairs that were available in front of the railing separating the trial area and the area normally available to the public. Thus, there was no space available for any member of the public to be admitted to the courtroom during the jury selection process. According to his affidavit, the bailiff, without specific direction from the Court, but because of the Court’s general policy favoring segregation of prospective jurors from witnesses and spectators, excluded the father and brother and two friends of the defendant from the courtroom during this phase of the trial. No court order of exclusion was made, nor was any objection made to the exclusion of all spectators. After the jury had been selected, spectators were permitted in the courtroom and the brother of the defendant noted that one of the jurors was a person whom he had known and he felt might be prejudiced against him, and by association, against the defendant. According to affidavits filed with the amended motion, these facts were not called to the attention of the defendant nor his attorney until on or about November 15, 1967, following which, the amended motion was filed as recited above.
The trial judge filed a written opinion denying the amended motion for a New Trial or Judgment of Acquittal. In the opinion, the facts are set forth in some detail. The trial judge decided contrary to the contentions of the defendant for three principal reasons:
(1) The defendant’s right to a fair trial was protected by insuring that there was no commingling of witnesses, attorneys and other participants with the prospective jury panel, the presence of the prospective jury members themselves as adequate representatives of the ‘public,” and the availability of the courtroom to the press;
(2) That if objection had been timely made, the Court might have made arrangements for a larger facility in *230 which to conduct this portion of the trial, or otherwise remedy the situation; and
(3) That the defendant was not, under the circumstances here, prejudiced by the exclusion.
The question is, in my view, a close one, as the trial court indicated in its opinion, and does present two novel aspects. One is the fact that the exclusion was not by an express order of the Court, but by the action of the bailiff under a general “policy.” The other, which is totally novel as far as I am able to determine, is that exclusion of all members of the public was necessitated by a courtroom of such small dimensions that only the prospective panel could be seated.
It is conceded that the jury selection process is part of the trial itself.
The first question for determination is as follows: Where court facilities are so limited physically that no members of the public, as distinguished from prospective jurors and other participants, may be present during the trial of the defendant, has the defendant been denied the right to public trial? In my opinion, this question must be answered in the affirmative. While reasonable limitations resulting from physical facilities must occasionally be imposed as a practical matter, this does not give any branch of government the right to provide or use facilities for criminal trials which, by their very nature, preclude a public trial.
United States v. Kobli, 172 F.2d 919 (3rd Cir. 1949), cited in the opinion of the majority, does not, in my view support the proposition for which it is cited. In that case, the Court discussed the historical basis of the right to- a public trial. It concluded that limitations could properly be imposed to protect the young, to preserve order and decorum, to reserve space for those directly connected with the trial, and to exclude “. . . those persons or classes of persons only whose particular exclusion is justified by lack of space or for reasons particularly applicable to them. . . .” (p. 923). However, on the point that this does *231 not permit total exclusion, that Court said, also- at page 923 and 924:
“Thus it has been suggested that if the members of the public are entitled to be present the right should be accorded to all who desire to attend and not merely to those who by coming early are able to gain admission to the limited number of seats available. The Courts, however, have denied that the constitutional right to a public trial involves the necessity of holding the trial in a place large enough to accommodate all those who desire to attend. Also it has been suggested that the end of publicity sought to be achieved will be accomplished by permitting newspaper reporters to be present, as the trial judge in this case did, without the indiscriminate admission of members of the public who may come only out of curiosity. It may well be that in most cases this would be sufficient to insure that acts of judicial misconduct would receive public attention. The law, however, is chary of putting all its eggs in one basket. The apparently idle spectator may turn out to be the one person who- directs public attention to acts of judicial oppression which are overlooked by the more seasoned but sometimes blase professional gatherer of news. Moreover, as had been suggested by Professor Wigmore, it is entirely possible that the apparently idle spectator may prove to- be the unknown witness vital to the defense of the accused.
“We are satisfied that the framers of the Sixth Amend • ment believed it to be essential to the preservation of the liberty of the individual that, to the extent and within the limits which we have indicated, members of the general public should be admitted to every criminal trial even though it might appear that, in a case such as the one before us, most of them come only out of morbid curiosity ....
“(9) While, as has been suggested, the right thus accorded to members of the public to be present at a criminal trial as mere spectators may not be wholly logical, it has been imbedded in our Constitution as an important *232 safeguard not only to the accused but to the public generally. Having evolved as a basic right which has withstood the test of the centuries, it hardly needs at this late date the support of the logician. We are in duty bound to preserve the right as it has been handed down to us and this we will do only if we make sure that it is enforced in every criminal case, even in such a sordid case as the one now before us.”
If the Court is precluded from denying a substantial portion of the interested public from attending a trial, it seems clear that the legislative or executive authority charged with the duty of providing space for trials cannot accomplish the same end by making the space so limited that none of the public can attend.
In People v. Murray, 50 N.W. 995 (Mich. 1891), it was held that an order limiting attendance to “respectable persons” was improper, and further that the court could not delegate the right to determine who should be admitted to a police officer under the control of the court.
In State v. Hensley, 79 N.E. 462 (Ohio 1906), the trial involved an alleged sexual offense against a female of the age of 14 years. On the second day of the trial, the trial court transferred the case to a small courtroom, the probate courtroom, and ordered the exclusions of all except the jury, defendant’s counsel, members of the bar, newspaper men, and a witness for the defendant. The order was made in open court in the presence and hearing of his counsel. No objection was made other than the statement by one of defendant’s counsel that the defense knew of no testimony that would be improper to be heard in a public trial. After discussing the constitutional provision in Ohio, which guaranteed a public trial, the court said as follows at page 463:
“The term ‘public’, in its enlarged sense, takes in the entire community, the whole body politic, and a public trial means one which is not limited or restricted to any particular class of the community, but is open to the free observation of all. This does not impose upon the *233 authorities a duty to provide so large a place for public trials as would accommodate every member of the community at the same time, for that would be plainly impractical, but it does import a duty to make reasonable provision in that regard, and this requirement is usually met by ample accommodations for the purpose. And these considerations suggest the duty of courts, when trying persons accused of crime, to avail themselves of the means thus furnished, but suggest, further, that the entire public may not be present at such trial.... Assuming that the rule above indicated governs the case, it is manifest that the order of exclusion made by the trial judge was in excess of the power of the court in the premises. It permitted the admission of a very limited class of the public and excluded all others. Without doubt the object which was sought to be attained was in all respects, save the one indicated above, highly commendable. ...”
The court went on to give examples of who might properly be excluded, and that the trial judge has broad discretion in that regard, but that the people have the right to know what is being done in their courts. The unduly restrictive exclusionary order, effectuated by a transfer to a smaller courtroom, was held to require a reversal of the conviction.
The interest of the trial court here in preventing the commingling of the prospective jury panel with other participants in the trial and members of the public generally is understandable, and completely proper, it being not an infrequent occurrence that such commingling-does result in, as said by the trial court “. . . a mistrial, or even worse, a miscarriage of justice, . . . .” It is also clear from the trial court’s opinion that the facility itself left no reasonable alternative except that different facilities might have been procured if objection had been made to the Court. However, the fact is that the defendant did not have a public trial as contemplated by the Constitutions.
The second question is: Did defendant’s failure to ob *234 ject constitute a waiver of the right to a public trial?
It should be observed, as it was in the Davis case, infra, that the right to a public trial is not only a right of the defendant — it is a right of the public. Although the defendant is the one whose case is before the Court, it would seem that the public’s right could not be waived by the defendant, nor eliminated by the omission of a governmental agency to provide an adequate facility. The language of the Kobli case, supra, would indicate the existence of a public right, also.
It is usually mentioned in passing that the constitutional right involved is also guaranteed by the Constitution of the State of Colorado, but although the federal cases are more numerous, the right guaranteed by Section 16, Article II of the Constitution of Colorado is the same right as the right to a public trial as contained in the Sixth Amendment to the Constitution of the United States.
Colorado Rules of Procedure, Civil and Criminal, have consistently required that certain proceedings be held in open Court, except where circumstances compel a limitation. It is to be noted that an existing directive of this Court requires that even preliminary hearings must be public hearings unless the Trial Court determines, after a hearing, that it is in the best interests of the defendant and the general public that it be a private hearing, and that the defendant consents thereto. CJD No. 6, March 27, 1970. It is not logical to assume that the “public” requirements for trial are less stringent than the “public” requirements for a preliminary hearing. There is no finding by the trial court, nor any indication in the record, that the public interest compelled the conduct of this trial in a facility so small that no portion of the public could attend. To say that the “public” waived its right because the City and County of Denver did not provide an adequate courtroom would be to subject all of the members of the public to a limitation imposed by a governmental subdivision. Just as the defendant could not waive the *235 right of the public, the City and County of Denver could not waive the right of the public. The question of whether or not the public interest would be better served by a total exclusion of the public must remain a judicial determination, subject to judicial review.
Seemingly contrary to the view that the right to public trial is a right shared by the public to the extent that there can be no waiver thereof by the defendant is United States v. Sorrentino, 175 F.2d 721 (3rd Cir. 1949). Sorrentino was another of the defendants convicted in the trial which resulted in the conviction of the defendant Kobli, whose case is referred to above. Kobli had objected to the exclusionary order and Sorrentino’s counsel had expressly stated they did not join in the request of defendant Kobli’s counsel and that they had no objection to the order of exclusion. The Court held that the action of Sorrentino’s counsel was binding upon him, and that the right to public trial was one which could be waived, and was effectively and affirmatively waived by his attorneys. Although seemingly inconsistent with the concept of the right to public trial as referred to herein-above, even if Sorrentino does state the law, the opinion of the Court was based on an affirmative waiver. It did not reach the question of whether such a waiver exists where no exclusionary order was entered, and defendant and his counsel contend that they had no knowledge that an exclusionary practice was in effect which excluded all members of the public.
Perhaps the answer lies in the proposition that there is a public right, subject to limitations, but that a violation thereof which only interferes with the wishes of a disinterested member of the public can only be cured by other available remedies — it does not give the consenting defendant another trial.
In respect to the defendant’s right, Kobli, supra, says it cannot be denied over objection, and Sorrentino says it can be waived by affirmative action. In the middle is this case.
*236 In the only case directly on the point of the lack of an objection, the Ohio Supreme Court said:
“. . . The right to a public trial is guaranteed . . . The right cannot be waived by silence any more than the right to be tried by jury where the accusation is a felony and the plea is not guilty . . .” State v. Hensley, supra, p. 464.
The Sixth Amendment to the Constitution of the United States provides for rights of such a fundamental character that due process of law as contained in the Fourteenth Amendment includes observance of the rights therein guaranteed by the states, Gideon v. Wainright, 372 US 335, 83 S.Ct. 792, 9 L.Ed.2d 799. One of those guarantees is the assistance of counsel, and the United States Supreme Court has specifically held this to be of such fundamental character as to require that it be allowed at all stages of the proceedings. Escobedo v. Illinois, 378 US 478, 84 S.Ct. 1758, 12 L.Ed.2d 977. Not only must defendant be permitted to have counsel, but no waiver exists unless the accused is first specifically advised of his right to counsel, and to appointed counsel if he could not afford to retain counsel. Miranda v. Arizona, 384 US 436, 86 S.Ct. 1602, 16 L.Ed.2d 694. Thus, it must be shown that one knows his right before a waiver — an intentional act — exists. It follows that unless one knows a violation of his rights is occuring, he could not knowingly waive them.
In my view, the right to a public trial, subject to reasonable limitations under specific circumstances, is no less fundamental than the right to counsel. Total inadequacy of the facility to permit a public trial is the other end of the spectrum from the requirement that all be permitted to attend who wish to do so. The right lies between those two poles. In the case at bar, the limit of reasonableness was obviously exceeded, as no members of the public were admitted, except the prospective jurors, who were participants. Hence, the defendant was effectively denied a public trial, even though the Court *237 itself did not so order, and the defendant, being unaware of the condition at the time, did not object. The trial court reasoned that the defendant and his counsel should have known that his relatives were excluded from the circumstances. However, a knowledgeable waiver of a fundamental right cannot be based on an assumption, especially where the attorney, an officer of the Court, unequivocally states that he was not possessed of that knowledge. See Miranda v. Arizona, supra, at page 720 of the Lawyers Edition and pages 468-9 of the official reports.
I believe that the authorities require the conclusion that the right to a public trial is so fundamental that unless there is a showing that there was some overwhelming contrary consideration, or that the interests of justice required a limitation thereon, and the trial judge has therefore imposed a limitation within the area of his reasonable discretion, a trial conducted in violation of the defendant’s constitutional right to a public trial without an express waiver shown affirmatively by the record should not be permitted to stand when the question is properly before the Court on Writ of Error or appeal. There is no waiver by failure to object, at least where the record is silent as to whether the defendant and his attorney knew that interested persons were universally being excluded. That the defendant must have known that his father and brother were being excluded in this matter may be a reasonable inference, but it is also reasonable to infer that the defendant and his attorney were so engrossed in the jury selection process that the possible prejudicial effect of such exclusion did not enter their consciousness. To ground a knowledgeable waiver of this fundamental right upon one of two possible inferences is not constitutionally permissible, in my opinion.
The last question is: Was the error harmless error as comprehended by Rule 52(a), Colorado Rules of Criminal procedure?
*238 The question should be answered in the negative,, in my opinion.
It was suggested that the affidavit of the juror who was recognized by the defendant’s brother shows that she was not prejudiced or biased against the defendant’s brother, and that, therefore, the error, if any, was harmless.
In Illinois v. Allen, 397 U.S. 337, 90 S.Ct. 1057, 25 L.Ed. 2d 353, it was held that the defendant waived his right to confront witnesses against him by continued grossly disruptive conduct, after repeated warnings by the Court that such continued conduct would have the result that occurred.
The general basis of Sixth Amendment rights, although not directly in point on the facts here, and the reason why supposed waivers are not recognized unless they are clear, is found in the alternatives which can occur if they are eroded by the process of overlooking deprivations thereof in seemingly harmless situations. They are summarized by Mr. Justice Brennan in a concurring opinion in the Allen case, as follows:
“The safeguards that the Constitution accords to criminal defendants presuppose that government has a sovereign prerogative to put on trial those accused in good faith of violating valid laws. Constitutional power to bring an accused to trial is fundamental to a scheme of ‘ordered liberty’ and prerequisite to social justice and peace. History has known the breakdown of lawful penal authority — the feud, the vendetta, and the terror of penalties meted out by mobs or roving bands of vigilantes. It has known, too, the perversion of that authority. In some societies the penal arm of the state has reached individual men through secret denunciation followed by summary punishment .... The right of a defendant to trial- — -to trial by jury — has long been cherished by our people as a vital restraint on the penal authority of government. And it has never been doubted that under our constitutional traditions trial in accordance with the Constitution *239 is the proper mode by which government exercises that authority.” (Emphasis supplied.)
In this case, if the defendant’s brother had been present and if the identity of this particular juror had been made known to defendant’s counsel, the questions purportedly answered in the juror’s affidavit could have been explored on voir dire, and defendant’s counsel could have exercised his professional judgment in determining whether or not a peremptory challenge to the juror should be used, even if the Court were to rule against a challenge for cause. However, none of these recognized trial procedures was available to defendant’s counsel.
Where the public interest is such as to compel the utilization of facilities which are inadequate to provide basic constitutional guarantees, it is the public that waives its right to try persons accused of crimes. The defendant in such circumstances may well be given the proverbial Hobson’s choice: either you go to trial in an inadequate facility or your trial will be postponed until a facility becomes available. Thus, the defendant must waive his right to a public trial or waive his right to a speedy trial, and is compelled to choose between them.
The right to a speedy trial means trial consistent with the Court’s business. Gonzales v. People, 156 Colo. 252, 398 P.2d 236. However, it could not be seriously contended that if no courts were provided, or the number of courts were so grossly inadequate as to extend the time of trial to an unreasonable time, or if the number of courtrooms available for a public trial were so few that defendants who do not wish to waive either their right to a public trial or their right to a speedy trial could be held in custody indefinitely, constitutional requirements are met.
If there are any constitutional rights which are fundamental to due process of law, they are the rights to a speedy trial and to a public trial. While both are subject to the reasonable limitations required by our governmental and social structure, this cannot be made the *240 basis for a complete denial of those rights, and excuse the denial as harmless.
The closest case on the facts which I could find is rather old, but the principle would seem to be the same today, namely, State v. Brooks, 92 Mo. 542, 5 S.W. 257. In that case, the Court explained the facts and said as follows, at pages 263 and 264 of the Southwestern Reports:
“It is also objected that defendant did not have a public trial. This claim is based on the fact that, during the early stages of impaneling the jury, two- men were stationed, on the afternoon of one day and the forenoon of the next day, at the door of the court-room, who refused to admit any one into the court-room except jurors, witnesses, or officers of the court, or those having business in court. It appears that, when this matter was brought to the attention of the court, the court stated that no order had been made stationing men at said door, and announced that any one who wished to come into the court-room could do so, and made an order that all persons be admitted until ail the seats were filled. Had the court either refused to make such an order, or if, after making it, had refused a request on the part of defendant that the jurors who had been examined touching their qualifications while the men were stationed at the door should be re-examined, this might have afforded some ground for the complaint made . . . .”
Hence, where corrected before the panel was complete and sworn, the error was harmless. Such is not the fact in the case at bar.
The many cases up to its date were summarized and discussed in Davis v. United States, 247 F. 394 (8th Cir. 1917). The Court in that case held that prejudice to the defendant need not be shown where an exclusionary order was entered. The Circuit Court said in that case at page 398-9, as follows:
“. .. A violation of the constitutional right necessarily involves prejudice and more than that need not appear. *241 Furthermore, it would be difficult if not impossible in such cases for a defendant to point to any definite personal injury. To require him to do so would impair or destroy the safeguard.”
It has been held in Colorado that prejudice to the defendant need not be shown if, in fact, a public trial was denied. Thompson v. People, 156 Colo. 416, 399 P.2d 776 (1965).
To say that the error was harmless, based upon a subsequent affidavit of the juror whose possible prejudice is the basis for this challenge, would be to make a mockery of the voir dire process and the right of peremptory challenge. The determination of the fairness and impartiality of the jury must be established by the record prior to trial within the limits of the Constitutions and rules of procedure adopted thereunder, and must be accomplished prior to the reception of evidence. There are too many imponderables in respect to the exercise or failure to exercise peremptory challenges to justify holding that the presence of one juror could not have affected the outcome of the trial. Armed with knowledge obtained during the voir dire process, including any information supplied by the defendant or spectators, the attorney has a sufficiently heavy burden in determining whether to exercise or not to exercise a peremptory challenge, without depriving him of any reasonable, permissible source of information such as that which might be available if the trial, including the jury selection process, were a public trial as is constitutionally required.
I have read the entire transcript in this matter. A recitation of the unusual factual situation disclosed thereby would unduly lengthen this opinion. Suffice it to say that the testimony of the witnesses for the people was not only in conflict directly with the testimony of the defendant, whose presence at the time and place of the alleged robbery was as consistent with his explanation as that of guilt, but was also, in some particulars, inconsistent with the testimony of each other. These were *242 matters for the jury to resolve, and the record discloses that much time was spent by the jury in deliberation. The defendant did not exercise all of his peremptory challenges. Under these circumstances, it is clear that the composition of the jury was extremely important, and that irregularity of a substantial nature in respect to the jury selection could not be said to have been harmless, factually or legally.
There is no way to determine what would have happened if the excluded persons had been present in Court during the jury selection process. Since there was no overwhelming public interest to the contrary, they had a right to be present. To say that the result might have been, or even probably would have been the same, and that the error did not, therefore, substantially harm the interests of the defendant is to engage in judicial hindsight, when the Constitution requires judicial foresight. The trial judge did not err in making an Order, but it is my view that it was error not to insure that the defendant’s trial, and all portions thereof, was a public trial, within the meaning of the authorities cited above. Since the error was not called to the trial court’s attention until the amended motion for a New Trial was filed, error, in my view, was committed in not granting that motion, as there was no way, factually, to determine with reasonable certainty what the consequence would have been if the initial error had not occurred.
If no objection had been made and no request for a new trial had been made, the practical question might be different. However, the matter having been caked to the trial court’s attention while it was still within the power of the trial court to correct the error by granting a new trial within a few months after the unconstitutional trial, I would hold that the trial court erred in not doing so. The fact that more time has now elapsed, and that prosecution at this time might be difficult does not provide my conscience an escape from the inevitable conclusion that defendant was denied a very substantial *243 right, in violation of the Constitutions of the United States and the State of Colorado. Since it was within the power of the Trial Court to right that wrong, I would hold that it had the duty to do so.
The majority opinion refers to criticism of the overturning of verdicts because of “... ingenious arguments . . . predicated upon constitutional rights which were not truly in issue...” I assume that these are related, if not identical, positions, except that the doctrine of “harmless error” is a judicially recognized one, while “criticism” of Court’s decisions is usually reserved for later decisions which find flaws in the logic of an earlier decision, and to public criticism of Court decisions which enforce constitutional rights contrary to public opinion at the moment. I am confident that the expression used in the majority opinion refers to judicial criticism of the logic of some of the Supreme Court’s decisions during the last decade, perhaps including some of those cited above, as I am certain that my judicial superiors do not believe that public criticism of judicial enforcement of constitutional safeguards is entitled to judicial cognizance in any decision which involves the life or liberty of an individual in the State of Colorado.
The majority opinion cities Chapman v. California, 386 US 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), but it is unclear as to whether it is cited as an example of such a criticized decision, or as criticism of overturning verdicts for insubstantial reasons. If the latter, only the dissenting opinion, by a single Justice, would be such criticism. Seven justices, in that case, concur that the verdict should have been overturned as against the application of the California “harmless error” rule. One Justice would apparently invalidate the harmless error rule where constitutional rights are involved.
The case involved improper comments on the failure of the defendants to testify. The specially concurring opinion, in a footnote, makes reference to the distinction *244 between an improper application of the exclusionary rules based upon unconstitutionality involved in obtaining evidence and a trial in which the jury was unconstitutionally selected, or an unconstitutional instruction given. Applying that distinction here, the jury was selected in an unconstitutional manner, and the verdict must be overturned regardless of any actual prejudice. Mr. Justice Stewart said, at page 722 of the Lawyers Edition:
“... In a long line of cases leading up to and including Whitus v. Georgia, 385 US 545, 17 L.Ed.2d 599, 87 S.Ct. 643, it has never been suggested that reversal of convictions because of purposeful discrimination in the selection of grand and petit jurors turns on any showing of prejudice to the defendant.”
I think the rationale of that rule is precisely in point here, and question whether criticism of the application of the exclusionary rule of evidence will ever be sufficient to justify sustaining a verdict by a jury selected in a closed proceeding.
I would agree that there is basis for the judicial “justifiable criticism” of the application of the exclusionary rule which suppresses evidence obtained in violation of certain constitutional provisions. However, though of interest to legal scholars, the argument as to the wisdom of the exclusionary rule is moot. It is the law of the land under United States Supreme Court decisions which, though limited somewhat in recent cases, have not been overruled.
A different question entirely is presented when we deal with the basic procedural requirements of due process of law in criminal trials. These fundamental requirements include notice, an opportunity to be heard by an impartial tribunal, the assistance of counsel, and, I submit, the right to a speedy and public trial. Whether or not the exclusionary rule survives the passage of time, and reconsideration by the Supreme Court when com *245 posed of different justices, remains to be seen. Perhaps the “justifiable criticism” will prevail. However, the right to a public trial is not, in my opinion, subject to any rational criticism and has withstood the test of centuries. When it is lost, by erosion of judicial decision or by “practical” problems- of inadequate space provided by “practical” executive or legislative bodies, one of the truly fundamental supports of the concept of individual rights under law will have been sacrificed on the altar of expediency. Our inefficient and cumbersome system may be less so. All that will be lost is a little more of the impractical idealism on which this nation was founded. When the last of that outdated eighteenth century idealism has been submerged in a sea of practicality, the practical advantage to the masses will no longer be impeded by legally protected rights of individuals, and the “last, best hope of mankind” will have quietly passed from our civilization. Perhaps that is overextending the significance of the trend exhibited by the majority opinion. However, when we qualify the right to a public trial by requiring proof that its denial caused actual prejudice, or was “really an issue,” or by giving sanction to an exception where a miniature courtroom was all that was deemed necessary for trial of an armed robbery charge, I think we take a significant step down the path that leads to that inevitable end. As a confirmed idealist in respect to the worth of the individual as opposed to the self-interest of the mass of the privileged, it saddens me. As one sworn to uphold the Constitutions of the United States and the State of Colorado, I find myself in conflict with the considered views of others with a similar responsibility. It is not from a feeling of intellectual superiority that I express my disagreement, but from a legally trained mind and a morally committed conscience that is individual to me. Although arrayed against it is superior training and experience, and at least equal conscientiousness on the part of the members *246 of this Court, it tells me that the possibility of injustice to this individual defendant is a serious reality, and the cause of “ordered liberty” even more threatened as a result of this decision.