UNITED STATES

v.

**Senior Airman Kevin G. FISKE, FR 018–60–4928, United States Air Force.**

**ACM S28078.**

U.S. Air Force Court of Military Review.

Sentence Adjudged 16 March 1989.

Decided 7 July 1989.

Appellate Counsel for the Appellant: Colonel Richard F. O'Hair.

Appellate Counsel for the United States: Colonel Joe R. Lamport.

Before LEWIS, BLOMMERS and KASTL, Appellate Military Judges.

## DECISION

BLOMMERS, Judge:

Following arraignment, trial defense counsel requested that the hearing be closed "due to the nature of some information that will come out during the trial." Ascertaining that the appellant understood his constitutional right to a public trial, that he desired to waive that right, and that the Government had no objection, the military judge granted the defense request. Spectators were barred from the remainder of the proceedings.[1]

This is the second case we are aware of in this decade that a military judge has closed an Air Force court-martial trial without a reason therefor being articulated on the record. *See United States v. Czarnecki,* 10 M.J. 570 (A.F.C.M.R.1980). *That's two too many.*

The United States Supreme Court has ruled that the right of the public and press to attend criminal trials is guaranteed under the First and Fourteenth Amendments. *Richmond Newspapers, Inc. v. Virginia,* 448 U.S. 555, 100 S.Ct. 2814, 65 L.Ed.2d 973 (1980). *See also Press Enterprise Co. v. Superior Court of California, Riverside County,* 464 U.S. 501, 104 S.Ct. 819, 78 L.Ed.2d 629 (1984). The public's right to attend criminal trials

---

1. We believe that no spectators were present at the time, since no one was asked to leave the court room, nor is there a notation by the court reporter in the record indicating anyone departed.

extends to courts-martial. *United States v. Travers*, 25 M.J. 61 (C.M.A.1987); *United States v. Hershey*, 20 M.J. 433 (C.M.A. 1985), *cert. denied*, 474 U.S. 1062, 106 S.Ct. 809, 88 L.Ed.2d 784 (1986); *United States v. Czarnecki, supra.* As Judge Cox, writing for a unanimous Court, said: "Indeed, we believe that public confidence in matters of military justice would quickly erode if courts-martial were arbitrarily closed to the public." *United States v. Travers*, 25 M.J. at 62.

█ There may well be circumstances where all or at least a portion of a trial in cases not involving classified or national security issues may be closed. *See generally United States v. Cianfrani*, 573 F.2d 835 (3d Cir.1978); *United States v. Moses*, 4 M.J. 847 (A.C.M.R.1978), *pet. denied*, 5 M.J. 207 (C.M.A.1978); and cases collected in Annotations at 49 A.L.R.3d 1007 and 48 A.L.R.2d 1436. But as we said in *Czarnecki*:

> Prior to excluding all or portions of the public from viewing a court-martial, the military judge must articulate findings warranting, and limiting as narrowly as possible, the infringement upon the Constitutional right of the public to attend courts-martial of the United States.

*United States v. Czarnecki*, 10 M.J. at 572. *See also* R.C.M. 806(b), Discussion, specifically the seventh paragraph thereof; and MCM, App. 21, Analysis at A21–42 (1984). All military judges should be aware of the inquiry which must be made before granting a request for closure. We would have no objection to a military judge, in an appropriate case, holding an Article 39(a) session closed to the public in order to evaluate the request and make the requisite findings. *See*, e.g., Mil.R.Evid. 412(c).

█ We believe we perceive the reason for the closure request in the instant case. During the inquiry into his guilty pleas, the appellant indicated he had provided the names of several other individuals together with whom he had used marijuana to Air Force law enforcement authorities in hopes of receiving a more lenient treatment in his own case. He provided all those names to the military judge. However, this does not strike us as any different from hundreds of other drug or theft cases we see where an accused "turns state's evidence" after getting caught, and the extent of his assistance is paraded before the court as a matter in mitigation. Those trials were not closed. Also, the record is absolutely devoid of any justification for the trial to have remained closed during the sentencing portion of the proceedings.

We must conclude, however, as we did in *Czarnecki*, that this error against public interest in no way harms the appellant. No party in interest is complaining about the way the case was handled at the trial level. There is no controversy.[2] No specific errors have been assigned, and our review of the record reveals no others. R.C.M. 1114(c)(2). We will not disturb the findings or sentence under these circumstances. Article 59(a), UCMJ, 10 U.S.C. § 859(a). *See also State v. Bayless*, 48 Ohio St.2d 73, 357 N.E.2d 1035, 1057–58 (1976); *Anderson v. People*, 176 Colo. 224, 490 P.2d 47 (Sup.Ct.1971) *cert. denied*, 405 U.S. 1042, 92 S.Ct. 1316, 31 L.Ed.2d 583 (1972). We reserve judgment as to what remedies, if any, this Court might invoke if faced with this situation again, but where a timely complaint about the closure has been made by the press or a member of the general public.

The approved findings of guilty and the sentence are correct in law and fact and, accordingly, are

AFFIRMED.

Senior Judge LEWIS concurs.

KASTL, Senior Judge (concurring):

As I understand it, there are three guidelines discernible from the lead cases on public trials.

---

**2.** *See United States v. Czarnecki*, 10 M.J. at 572, n. 3. The 1969 Manual under which *Czarnecki* was decided included the following provision: "Persons other than the accused have no standing to object to the exclusion of spectators." MCM, 1969 (Rev.), para. 53e. Although the Analysis to the 1984 Manual states that paragraph 53e is the "thrust" behind Rule 806, the matter of who may or may not have standing to contest the exclusion of spectators is not addressed.

Guideline #1 is almost simplistic; this nation has an "unbroken, uncontradicted history supported by reasons as valid today as in centuries past" supporting open trials. *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 563–575, 100 S.Ct. 2814, 65 L.Ed.2d 973 (1979). So far so good.

But now things begin to get complicated. Guideline #2 applies when a defendant seeks to close his trial—seeking, for example, to avoid exposure of his role as an informant. It appears that a defendant can waive his right to a public trial. *See United States v. Sorrentino*, 175 F.2d 721, 723 (3d Cir.1949) *cert. denied*, 338 U.S. 868, 70 S.Ct. 143, 94 L.Ed. 532 (1949) (author judge notes that this is a case of first impression in the Federal courts); *Geise v. United States*, 265 F.2d 659 (9th Cir.1959) *cert. denied*, 361 U.S. 842, 80 S.Ct. 94, 4 L.Ed.2d 80 (1959). *See also United States v. Powers*, 622 F.2d 317, 323 (8th Cir.1980), *cert. denied*, 449 U.S. 837, 101 S.Ct. 112, 66 L.Ed.2d 44 (1980). It is crucial to note that the defendant successfully invoking a closed courtroom thereby preempts the right of the public to an open trial described in Guideline #1.

Now things become even more complicated. Guideline #2 is a satisfactory explanation of situations where no member of the public demands entrance into the trial. However, it does not clarify what happens after the defendant and other trial participants have agreed to closure yet someone—such as a member of the public or a newspaper reporter—protests bolting the courthouse doors. In *Richmond Newspapers*, the press was permitted to intervene in the proceedings. The Supreme Court first commented that the Sixth Amendment does not give the accused the right to a private trial. *Richmond Newspapers*, 448 U.S. at 580, 100 S.Ct. at 2829. The Court then held that "absent an overriding interest articulated in findings, the trial of a criminal case must be open to the public." *Richmond Newspapers* at 581, 100 S.Ct. at 2829. One might call this Guideline #3.

I construe *Richmond Newspapers* as limited to situations where there is a third party or member of the public protesting sealing the courtroom. The case does not appear to override the right of the defendant to invoke closure as set forth in Guideline #2. The rub comes in deciding when Guideline #2 prevails over Guideline #3. Apparently the difference in the two situations—and their Constitutional consequences—lies in whether there is a member of the public "knocking at the courthouse door." If the public "knocks" to gain entrance, Guideline #3 applies. If there is no public protest, Guideline #2 controls.

If this is a correct reading of this difficult subject-matter, the logic is difficult to endorse. A practical example might make such misgivings clear. Suppose that a court-martial is scheduled at Bolling Air Force Base in Washington DC. The accused is a member of a closely-knit church, and several communicants desire to attend his trial. Unfortunately for these friends, there is a traffic jam and they arrive 30 seconds late; the courthouse door is locked and the bailiff explains that the accused elected a "closed" trial. Are we rationally saying that if the friends—or other members of the public—had arrived a half minute earlier and lodged a protest, Guideline #3 would apply but if they are 30 seconds too late Guideline #2 obtains? Do we switch to a different Constitutional set of "rights" if the visitors somehow seek to intervene in the proceedings?

*Richmond Newspapers* requires the judge to make findings to support closure and to inquire whether alternative solutions would ensure fairness. In *United States v. Czarnecki*, 10 M.J. 570 (A.F.C.M. R.1980), this Court recognized that *Richmond Newspapers* applied to trial by courts-martial; however, we apparently found Guideline #2 controlling. We said, premised on the 1969 Manual for Courts-Martial, that, in reality, no matter how strenuously the public might wish to be present, they have no standing to object to a closed court-martial. *See Czarnecki* at 572 n. 3.

The result of such reasoning is a classic "Catch 22:" First, in practical terms, if an accused desires that his court-martial be closed, it will not be publicized and nobody

will know about it and thereby have an opportunity to protest. We then uphold the result on the basis of an intelligent waiver by the accused to a public trial. Second, in any event, our footnote in *Czarnecki* indicates that no member of the public has a right to protest a closed court-martial. It follows that military judges, trial and defense counsel and willing accused can hold as many "secret" trials as they wish—and this Court is powerless to prevent it!

Judge Blommers has fairly and accurately applied the current precedents. I concur with the result, as I understand the case law. Nevertheless, the three guidelines and our position in *Czarnecki* that no "outsider" will be permitted to protest lead to illogical results. It's as if we were farmers who see an arsonist set fire to a neighbor's barn. Since it is not our barn, we view the matter with dismay but everyone feels powerless to call the fire department. Some of us perhaps console ourselves by rationalizing that our neighbor probably wanted his barn burnt down anyhow. The analogy is clear: In the present situation, a closed trial unequivocally violates the guidelines of *Richmond Newspapers;* but because the accused preferred to have his sins aired in private rather than in the open, the general public has no "standing," and thus we give no redress. *See generally* Steinman, *Public Trial, Pseudonymous Parties,* 37 Hastings L.J. 1 (September 1985).

A final thought: Once upon a time, the magistrate, State prosecutor, public defender, and defendant all agreed to hold a trial in secret. The defendant wanted this because he was a "snitch" and didn't want the world to know about it.

My example does not come from a far-off, undemocratic country. To the contrary, it is what happened in this court-martial (albeit with the appellant's consent) at Mountain Home Air Force Base in Idaho. The precedents support our ruling today. However, I cannot imagine that Congress in passing the Uniform Code of Military Justice ever envisioned that a closed trial was a permissible alternative to a public court-martial.