No. 25544

**Glyn Thomas Stapleton, Jr. v. District Court of the Twentieth Judicial District, State of Colorado, and the Honorable Rex H. Scott, one of the Judges thereof**

(499 P.2d 310)

Decided July 24, 1972.

188

Rollie R. Rogers, State Public Defender, J. D. MacFarlane, Chief Deputy, John A. Purvis, Deputy, William R. Gray, Deputy, for petitioner.

Stanley F. Johnson, District Attorney, Twentieth Judicial District, Robert M. Jenkins, Chief Deputy, for respondent.

*En Banc.*

MR. JUSTICE LEE delivered the opinion of the Court.

Petitioner seeks relief in the nature of mandamus under

Article VI, Section 3, of the Colorado Constitution, and C.A.R. 21. Because of the public importance of the matter here involved, we issued a rule to show cause why the relief requested in the petition should not be granted. The matter is now at issue.

■ Petitioner is charged in the respondent district court with first-degree murder and kidnapping. He filed pretrial motions to suppress statements and evidence seized, and sought to have a hearing on these motions, *in camera,* closed to the public and representatives of the news media. The district attorney resisted the private hearing and, after consideration, the trial court denied the motion. Petitioner seeks an order of this Court requiring the respondent district court to hold the hearing on such motions *in camera,* closed to the public and representatives of the news media. Upon consideration of the merits, we decline to to so and we discharge the rule.

The grounds for petitioner's motion for an *in camera,* closed hearing relate to protection of petitioner's constitutional right to a fair trial by an impartial jury and to due process of law as guaranteed by the Fifth, Sixth and Fourteenth Amendments to the United States Constitution and Article II, Sections 15 and 25, of the Colorado Constitution. His basic argument is that, by reason of the nature of the evidence which he sought to have suppressed and which he contends is incompetent and inadmissible, publicity concerning such matters would be disseminated through the news media, which would result in prejudice to him and his right to a fair trial before an impartial jury. In order that he be afforded a full and complete presentation of his suppression motions, it would be necessary to have a closed hearing so that all aspects might be explored relating to the obtaining of statements and to the discovery and seizure of other evidence sought to be suppressed. Otherwise, petitioner argues, he could not make a full presentation of his suppression motions without also sacrificing his fundamental right to a fair trial because of potential public dissemination of incompetent, inadmissible and prejudicial evidence.

Petitioner's argument is framed around the *American Bar Association Minimum Standards for Criminal Justice Relating to Fair Trial and Free Press,* § 3.1, which provides:
"3.1 Pretrial hearings.

* * *

"Motion to exclude public from all or part of pretrial hearing.
"In any preliminary hearing, bail hearing, or other pretrial hearing in a criminal case, including a motion to suppress evidence, the defendant may move that all or part of the hearing be held in chambers or otherwise closed to the public, including representatives of the news media, on the ground that dissemination of evidence or argument adduced at the hearing may disclose matters that will be inadmissible in evidence at the trial and is therefore likely to interfere with his right to a fair trial by an impartial jury. The motion shall be granted unless the presiding officer determines that there is no *substantial likelihood* of such interference. With the consent of the defendant, the presiding officer may take such action on his own motion or at the suggestion of the prosecution. Whenever under this rule all or part of any pretrial hearing is held in chambers or otherwise closed to the public, a complete record of the proceedings shall be kept and shall be made available to the public following the completion of trial or disposition of the case without trial. Nothing in this rule is intended to interfere with the power of the presiding officer in any pretrial hearing to caution those present that dissemination of certain information may jeopardize the right to a fair trial by an impartial jury." (Emphasis added.)
The trial court, without commenting on the foregoing standard as a guideline for its ruling, held that the granting of the motion for a private pretrial suppression hearing was discretionary with the court, to be determined upon a consideration of the nature of the pending charges and the attendant circumstances of the case. It observed that, while in the instant case it had previously granted, upon petitioner's motion, a private, *in camera* hearing and sequestered and

suppressed certain documents relating to other matters, it believed that sufficient control by the court could be exercised as the occasion might demand to prevent prejudice to the accused because of improper publicity resulting from matters that might be revealed by petitioner's pursuit of his suppression motions.

 Petitioner urges that we adopt the foregoing American Bar Association standard as an aid to the trial courts in the resolution of publicity problems inherent in public pretrial hearings. We now do so, believing that reconciliation of what may appear to be inevitable conflicts between the constitutional right of freedom of speech and of the press, vis-a-vis the right to a fair trial before an impartial jury and to due process, may be more readily accomplished.

 We recognize that constitutional guarantees are not always absolute and that full exercise thereof is not always entirely possible. *Anderson v. People,* 176 Colo. 224, 490 P.2d 47; *Hampton v. People,* 171 Colo. 153, 465 P.2d 394; *Thompson v. People,* 156 Colo. 416, 399 P.2d 776. On occasion, one right must necessarily be subordinated to another. The interest of the accused, whose life and liberty are in jeopardy, to a fair trial by an impartial jury is paramount, and may require, depending on the circumstances of the case, limitations upon the exercise of the right of free speech and of the press. The problem is one of balancing of interests so that irreconcilable conflict need not necessarily result from the simultaneous exercise of those constitutional rights. Whether in a particular case there has been an actual accommodation in the simultaneous exercise of the two rights, depends upon the circumstances of the case.

In the context of the factual setting of the present case, the trial court acknowledged the seriousness of the charges against petitioner and the unusual public interest in the trial of the case, as evidenced by the coverage by members of the news media attending previous court hearings. The court concluded, however, that adequate controls could be imposed during the hearing on the suppression motions so as to safeguard against potential prejudice that might flow from

the publication of matters revealed at the public suppression hearing. In exercising its discretion, the court in effect ruled there was no *substantial likelihood* that petitioner's right to a fair trial by an impartial jury would be interfered with as a result of a public hearing on petitioner's suppression motions.

Although we might have ruled differently had we been ruling upon this issue as a trial court, we cannot say that the court abused its discretion. Our function is not to preempt the trial court by directing the course of judicial proceedings before it. That is the primary burden of the trial judge who, by the nature of our judicial process, is in the best position to assure that a defendant's right to a fair trial, as well as the public's right to know the course of the trial proceedings, will be substantially protected. In carrying out its function, the trial court has considerable discretion and, as suggested in the court's findings, it is permissible and eminently proper to convene closed pretrial hearings when there is a *substantial likelihood* of prejudicial interference with a defendant's right to a fair trial by an impartial jury. Although the court here denied petitioner's motion, nevertheless, should intervening circumstances have developed, which lend further support to petitioner's position, the matter may always be reconsidered by the trial court.

The rule is discharged.

MR. JUSTICE GROVES and MR. JUSTICE ERICKSON dissenting.

MR. JUSTICE HODGES not participating.

MR. JUSTICE GROVES dissenting:

When a defendant asks that a suppression hearing be held *in camera,* I would have it the rule rather than the exception that his request be granted. However, we do not reach that proposition here. Perhaps I may be privileged on another day to expound my minority views in this respect.

A side observation should be made initially. In reading the trialogue between counsel and the court at the hearing preceding the court's ruling, one is deeply and favorably impressed with the high and conscientious efforts of each to

obtain a solid and just result under the law. There is no hint of deviousness by counsel here. It is apparent that the district attorney is not attempting to overplay his case, but merely wants a correct result. And the judge — one of high competence — has given the matter deep and intelligent consideration.

This is one of those cases in which a substantial segment of the public awaits each item of news with bated breath — the murder-rape of a beautiful 21-year-old University of Colorado coed, whose body was found not too far distant from the Boulder campus. Here are some of the headlines from the newspapers in Denver and in Boulder County:

"DENVER MAN IS CHARGED IN RAPE-SLAYING OF CU COED"

"SUSPECT IN RAPE CASE CHARGED WITH MURDER"

"SUSPECT CHARGED IN COED RAPE KILL"

"HEARING ORDERED FOR TUESDAY IN COED'S SLAYING"

"SLAY CASE PROCEEDINGS CONTINUE IN SECRECY"

"BOULDER D.A. EYES DEATH PENALTY IN COED'S SLAY CASE"

"CLOSED HEARING SOUGHT FOR STAPLETON—DEFENDER TO GO TO HIGH COURT"

An an illustration of how explosive the trial judge considered the publicity potential of this case — in the *in camera* hearing referred to in the headline quoted above he ordered that the persons involved in the prosecution and defense make no extrajudicial statements. The court also ordered that affidavits in support of search warrants and the returns and inventories thereon be sequestered.

The deputy public defenders who are representing the defendant had asked that the earlier hearing be *in camera.* A newspaper ran a long editorial criticizing the "secrecy order." Here are some excerpts from that editorial:

"The public defenders are employed and paid by the people.
* * *
"The judge muzzled the district attorney, the defense attorneys and police from discussing the case.

\* \* \*

"But the popular notion that citizens exposed to pre-trial publicity about a case cannot be impartial jurors flies in the face of reason and of trust in the democratic concept.

\* \* \*

"The People have no idea what goes on behind closed doors. Secrecy invites temptation to make behind-the-scenes deals, to remove damaging evidence from files, to 'take care of' cronies, to cover up official inefficiency or corruption, to maltreat prisoners, to coerce confessions, and so on.

\* \* \*

"The justice system belongs to the people and is the people's creature. It is not the exclusive preserve of the legal profession.

\* \* \*

"The Constitution recognizes no preference regarding the rights of fair trial and freedom of information. The notion that one subverts the other is a myth."

There is less danger of pre-trial prejudice by publicity if the court denies the motion to suppress. However, a ruling granting a motion to suppress is futile if the to-be-suppressed evidence has been the subject of a public suppression hearing. The cat will be out of the bag.

The court has predicated its ruling upon its opinion that during the suppression hearing it will be able to detect in advance any evidence that might be improper and highly prejudicial to the defendant and take prophylactic action. This may be true with respect to the contents of a written confession. However, when inquiry turns to whether exhibits seized in the search should be suppressed, I can easily visualize that some highly prejudicial items or testimony may come into evidence, however alert and attentive the trial judge may be. Irrespective of the fact that the court may suppress a matter, by that time the media has it and, satisfying the desires of the reading and listening public, will disseminate it.

The standard and ethics of the media are far, far higher than they were 23 years ago when *Walker v. People,* 169

Colo. 467, 458 P.2d 238 (1969) was tried. But the basic desire of the media to satisfy its readers and listeners has not changed. As in *Walker* we have a young lady attending the University of Colorado raped and murdered. As in *Walker* interest is high. Even assuming that the chance of a slip-up in the suppression hearing is remote, the right of a defendant to be free of prejudicial publicity as to a suppressed item hangs on too thin a thread to have his request for a private suppression hearing denied.

We talk of preventive medicine. Here is a case in which we should practice preventive justice and lessen the possibility that, if this defendant is eventually convicted, reversible error will have been committed at this early stage. I would hold it an abuse of discretion in this particular case to deny the motion for an *in camera* hearing on the motion to suppress.

MR. JUSTICE ERICKSON dissenting.

I respectfully dissent from the Opinion of the majority. According to the *American Bar Association Minimum Standards for Criminal Justice Relating to Fair Trial and Free Press,* Approved Draft, 1968 (hereinafter referred to as *Standards on Fair Trial and Free Press*) § 3.1, which section the majority adopts, the decision on the motion for a closed hearing is not discretionary with the trial judge. "In the case of pretrial proceedings, closure, though not automatic, *must* be ordered unless there is no substantial likelihood that information to be disclosed may be inadmissible at the trial and that dissemination of such information may prejudice the defendant." *Standards on Fair Trial and Free Press,* § 3.1, Commentary, pp. 117-118. (Emphasis added.) Therefore, when the trial judge concluded that prejudicial evidence could be anticipated to emerge at the hearings on defendant's motions to suppress, it was incumbent upon him to grant defendant's motion to hold the hearings in private, *in camera,* sessions.

In recent years, the United States Supreme Court has made it clear that failure to protect prospective jurors from prejudicial pretrial publicity may result in reversal of convic-

tions. *Rideau v. Louisiana,* 373 U.S. 723, 83 S.Ct. 1417, 10 L.Ed.2d 663 (1963); *Irvin v. Dowd,* 366 U.S. 717, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961). In cases where the likelihood of harm is apparent, relief will be granted "despite the absence of any showing of prejudice." *Sheppard v. Maxwell,* 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1966); *Estes v. Texas,* 381 U.S. 532, 85 S.Ct. 1628, 14 L.Ed.2d 543 (1965). In light of these guidelines, we must exert every caution to prevent prejudice if convictions are to be invulnerable to attack.

Section 3.1 of the *Standards on Fair Trial and Free Press* provides a workable means of protecting an accused against inflammatory publicity. The publicity that has been described by Justice Groves in his dissent, in my opinion, compels intervention by the Court to insure that further inflammatory publicity does not contaminate the trial and prevent the selection of a fair and impartial jury for the trial of this case.

MR. JUSTICE GROVES has authorized me to say that he joins me in this dissent.