STATE OF NEBRASKA, APPELLANT, V. CHARLES A. COMEAU,
APPELLEE.
STATE OF NEBRASKA, APPELLANT, V. LARRY L. RUSH, APPELLEE.
448 N.W.2d 595

Filed December 1, 1989.   Nos. 89-186, 89-187.

Robert M. Spire, Attorney General, and William L. Howland, and Kent D. Turnbull, Lincoln County Attorney, and John H. Marsh for appellant.

Kent E. Florom, Lincoln County Public Defender, for appellees.

Robert I. Eberly and Robert Dowlut for amici curiae National Rifle Association of America and Nebraska Rifle and Pistol Association.

Jerry Soucie for amicus curiae Nebraska Criminal Defense Attorneys Association.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

BOSLAUGH, J.

These cases involve an interpretation and application of the "Right to Bear Arms" amendment to the Nebraska Constitution, which was proposed by the initiative process and adopted at the general election on November 8, 1988. Article I, § 1, of the Constitution of Nebraska, as amended, now provides as follows:

> All persons are by nature free and independent, and have certain inherent and inalienable rights; among these are life, liberty, the pursuit of happiness, and the right to keep and bear arms for security or defense of self, family, home, and others; and for lawful common defense, hunting, recreational use, and all other lawful purposes, and such rights shall not be denied or infringed by the state or any subdivision thereof. To secure these rights, and the protection of property, governments are instituted among people, deriving their just powers from the consent of the governed.

In case No. 89-186, the defendant, Charles A. Comeau, was charged with possessing a firearm from which the manufacturer's identification marks or serial numbers had been removed, defaced, altered, or destroyed. The defendant filed a "demurrer" which alleged that the information failed to state a crime because Neb. Rev. Stat. § 28-1207 (Reissue 1985), under which the defendant was being prosecuted, was now unconstitutional. Treating the demurrer as a motion to dismiss, the trial court sustained it and dismissed the information.

In case No. 89-187, the defendant, Larry L. Rush, was charged, as a habitual criminal, with being a felon in possession of a firearm having a barrel less than 18 inches in length. The defendant filed a "demurrer" which alleged that the information failed to state a crime because Neb. Rev. Stat. § 28-1206 (Reissue 1985), under which the defendant was being prosecuted, was now unconstitutional. Treating the demurrer as a motion to dismiss, the trial court sustained it and dismissed the information.

The State then commenced proceedings under Neb. Rev. Stat. § 29-2315.01 (Reissue 1985) to review the orders dismissing the informations. In this court the cases have been

consolidated for briefing and argument.

It is fundamental that a statute is presumed to be constitutional, and the burden of establishing unconstitutionality is on the party attacking its validity. *In re Guardianship and Conservatorship of Sim*, 225 Neb. 181, 403 N.W.2d 721 (1987). Unconstitutionality must be clearly established before a statute will be declared void. *State v. Copple*, 224 Neb. 672, 401 N.W.2d 141 (1987).

Essentially, the question presented by these appeals is whether the amendment prevents the Legislature from passing any laws regulating the possession of firearms.

The defendants contend that the amendment must be read literally and that the language which states that the right to keep and bear arms is "inalienable" and shall not be "infringed" by state statute or local ordinance prevents any regulation by the Legislature of the right to possess arms. The defendants concede that the use of weapons may be regulated, but argue that mere possession may not be.

The State contends that the plain meaning of the amendment is that the right to keep and bear arms is limited to "lawful purposes." Lawful purposes are not defined in the amendment except as "for security or defense of self, family, home, and others, and for lawful common defense, hunting, recreational use, and all other lawful purposes . . . ." The State argues that in the exercise of the police power, the Legislature may define what purposes are lawful purposes.

The police power is an attribute of state sovereignty, and, within the limitations of state and federal Constitutions, the state may, in its exercise, enact laws for the promotion of public safety, health, morals, and generally for the public welfare. *Finocchiaro, Inc. v. Nebraska Liq. Cont. Comm.*, 217 Neb. 487, 351 N.W.2d 701 (1984).

There are very few rights which are absolute, and this is of necessity. In every phase of everyday experience, there are extremes beyond which some restraint or regulation is necessary for the common good.

Even in those cases where statutes have been held to be invalid because in conflict with a constitutional provision concerning the right to keep and bear arms, many courts have

recognized that the right is not absolute. In *City of Princeton v. Buckner*, 377 S.E.2d 139 (W. Va. 1988), in which the Supreme Court of Appeals of West Virginia held a statute requiring a license to carry certain weapons invalid, the court said:

> The question remains whether the State may reasonably regulate the right of a person to keep and bear arms in this State.
>
> We stress that our holding above in no way means that the right of a person to bear arms is absolute. *See* cases cited *infra* at p. 146. Other jurisdictions concluding that state statutes or municipal ordinances have violated constitutional provisions guaranteeing a right to bear arms for defensive purposes, though not specific in what ways this is to be done, have recognized that a government may regulate the exercise of the right, provided the regulations or restrictions do not frustrate the guarantees of the constitutional provision. *See, e.g.*, *In Re Brickey*, 8 Idaho 597, 599, 70 P. 609, 609 (1902); *City of Las Vegas v. Moberg*, 82 N.M. 626, 627, 485 P.2d 737, 738 (Ct.App.1971). Particularly, on three occasions, the Supreme Court of Oregon, in striking statutes as violative of the state's constitutional right to bear arms, has repeatedly stressed that the court's holdings should not be construed to mean that an individual has an "unfettered right" to *possess* or use constitutionally protected arms in any way he chooses. The Oregon court has consistently emphasized that the legislature may regulate such *possession* and use. *State v. Delgado*, 298 Or. at 403, 692 P.2d at 614; *State v. Blocker*, 291 Or. at 259, 630 P.2d at 826; *State v. Kessler*, 289 Or. at 370; 614 P.2d at 99.
>
> . . . .
>
> Our research has revealed that courts throughout the country have recognized that the constitutional right to keep and bear arms is not absolute, and these courts have uniformly upheld the police power of the state through its legislature to impose reasonable regulatory control over the state constitutional right to bear arms in order to promote the safety and welfare of its citizens. *See, e.g.*, *Bristow v. State*, 418 So.2d 927, 930 (Ala.Crim.App.),

*cert. denied* (Ala.1982); *People v. Blue*, 190 Colo. 95, 102-03, 544 P.2d 385, 390-91 (1975); *State v. Rupp*, 282 N.W.2d 125, 130 (Iowa 1979); *In re Atkinson*, 291 N.W.2d 396, 399 (Minn.1980); *State v. Angelo*, 3 N.J.Misc. 1014, 1015, 130 A. 458, 459 (1925); *State v. Dees*, 100 N.M. 252, 254-55, 669 P.2d 261, 263-64 (Ct.App.1983); *Commonwealth v. Ray*, 218 Pa.Super. 72, 79, 272 A.2d 275, 279 (1970); *Carfield v. State*, 649 P.2d 865, 871 (Wyo.1982). We stress, however, that the legitimate governmental purpose in regulating the right to bear arms cannot be pursued by means that broadly stifle the exercise of this right where the governmental purpose can be more narrowly achieved. *City of Lakewood, supra.*

At least forty-two jurisdictions have constitutional provisions guaranteeing a right to bear arms; however, most are distinguishable from art. III, § 22 either in their failure to specifically recognize the right to self-defense, or in their express recognition that the constitutional provision is subject to legislative regulation. *See* R. Dowlut & J. Knoop, *State Constitutions and the Right to Keep and Bear Arms*, 7 Okla. City U.L.Rev. 177, 236-240 (1982). The State, in the appendix to its brief, cites thirteen states which, like art. III, § 22, grant a rather broad, unrestrictive right to bear arms for the defense of self and the state. With the exception of Vermont, which imposes no significant regulation, the remaining jurisdictions regulate the ownership and use of arms in general, particularly handguns.

Again excluding Vermont, certain statutory regulations are common to most of the jurisdictions having constitutional provisions comparable to West Virginia's. For instance, *the prohibition against the possession or ownership of handguns by persons previously convicted of a felony or other specified crime is widely accepted.* Four states prohibit the open or concealed carrying of handguns without a license or permit; several others specifically prohibit carrying a concealed handgun without a license, while at least one of these jurisdictions, namely, Arizona, further prohibits carrying a handgun in

public establishments or certain specified public places.

. . . .

Based upon the foregoing, we conclude that the right to keep and bear arms guaranteed by *W. Va. Const.* art. III, § 22 is not unlimited. The individual's right to keep and bear arms and the State's duty, under it [sic] police power, to make reasonable regulations for the purpose of protecting the health, safety and welfare of its citizens must be balanced. *See People v. Blue*, 190 Colo. 95, 102-03, 544 P.2d 385, 390-91 (1975). Accordingly, the West Virginia legislature may, through the valid exercise of its police power, reasonably regulate the right of a person to keep and bear arms in order to promote the health, safety and welfare of all citizens of this State, provided that the restrictions or regulations imposed do not frustrate the constitutional freedoms guaranteed by article III, section 22 of the *West Virginia Constitution*, known as the "Right to Keep and Bear Arms Amendment."

(Emphasis supplied.) 377 S.E.2d at 145-49.

If the use of arms is subject to regulation, then regulation of the right to possession may be the only practical way to make an effectual regulation of the use. For example, if the use of arms by persons of unsound mind is to be prohibited, probably the only effectual way to prevent their use is to prohibit the possession of arms by such persons.

It is well known that the identification and tracing of a weapon is an important factor in solving crimes involving the use of a weapon. It is for that reason that identifying marks are sometimes removed from weapons. It would be of little use to prohibit the *use* of weapons from which identifying marks have been removed if the possession of such weapons is lawful. The most effective way to prevent the use of such weapons is to prohibit their possession. Similarly, the most effective way to prevent the use of handguns by felons is to prohibit the possession of handguns by felons.

We think the better view is that reasonable regulation of the possession of arms is not prohibited by the amendment.

In *People v. Blue*, 190 Colo. 95, 544 P.2d 385 (1975), the Supreme Court of Colorado held that a statute prohibiting

possession of guns by persons convicted of a felony was not invalid under a constitutional provision guaranteeing the right to bear arms. The Colorado constitutional provision was as follows:

> The right of no person to keep and bear arms in defense of his home, person and property, or in aid of the civil power when thereto legally summoned, shall be called in question; but nothing herein contained shall be construed to justify the practice of carrying concealed weapons.

Colo. Const. art. II, § 13.

The Colorado court said:

> It is argued that the statute, which prohibits possession, use, and carrying of a weapon, is a blanket proscription that cannot be reconciled with the literal constitutional language. A felon is a "person" within the meaning of Article II, Section 13, the argument runs, and once he has served his term he is reinstated to the full rights of citizenship, *Colo. Const.* Art. VII, Sec. 10, including the absolute right to bear arms.
>
> However, not all constitutional rights are absolute. *Mosgrove v. Town of Federal Heights*, 190 Colo. 1, 543 P.2d 715; *Stapleton, Jr. v. Dist. Ct.*, 179 Colo. 187, 499 P.2d 310; *Anderson v. People*, 176 Colo. 224, 490 P.2d 47, *cert. denied*, 405 U.S. 1042, 92 S.Ct. 1316, 31 L.Ed.2d 583; *United States v. Akeson*, 290 F. Supp. 212 (D. Colo. 1968); *Sigma Chi Fraternity v. Regents of the University of Colorado*, 258 F. Supp. 515 (D. Colo. 1966). When rights come into conflict, one must of necessity yield. The conflicting rights involved here are the individual's right to bear arms and the state's right, indeed its duty under its inherent police power, to make reasonable regulations for the purpose of protecting the health, safety, and welfare of the people. *Cottrell v. Teets*, 139 Colo. 558, 342 P.2d 1016; *Denver v. Denver & Rio Grande Co.*, 63 Colo. 574, 167 P. 969, *aff'd* 250 U.S. 241, 39 S.Ct. 450, 63 L.Ed. 958; *The People v. Hupp*, 53 Colo. 80, 123 P. 651.
>
> We do not read the Colorado Constitution as granting an absolute right to bear arms under all situations. It has limiting language dealing with defense of home, person,

and property. These limitations have been recognized by the General Assembly in the enactment of section 18-12-105, C.R.S. 1973, which restricts the right to bear arms in certain circumstances, while permitting in other circumstances the carrying of a concealed weapon in defense of home, person, and property, and also when specifically authorized by written permit.

In our view, the statute here is a legitimate exercise of the police power.

"* * * To limit the possession of firearms by those who, by their past conduct, have demonstrated an unfitness to be entrusted with such dangerous instrumentalities, is clearly in the interest of the public health, safety, and welfare and within the scope of the Legislature's police power." *People v. Trujillo*, 178 Colo. 147, 497 P.2d 1.

*See also People v. Trujillo*, 184 Colo. 387, 524 P.2d 1379. To be sure, the state legislature cannot, in the name of the police power, enact laws which render nugatory our Bill of Rights and other constitutional protections. *Lakewood v. Pillow, supra*; *People v. Hinderlider*, 98 Colo. 505, 57 P.2d 894; *Platte Etc., C. & M. Co. v. Dowell*, 17 Colo. 376, 30 P. 68, *appeal dismissed*, 154 U.S. 512, 14 S.Ct. 1150, 38 L.Ed. 1079. But we do not read this statute as an attempt to subvert the intent of Article II, Section 13. The statute simply limits the possession of guns and other weapons by persons who are likely to abuse such possession.

190 Colo. at 102-03, 544 P.2d at 390-91.

In *State v. Ricehill*, 415 N.W.2d 481 (N.D. 1987), the Supreme Court of North Dakota held that a statute prohibiting possession of firearms by convicted felons did not violate that state's constitutional guarantee of the right to keep and bear arms.

The constitutional provision was as follows:

All individuals are by nature equally free and independent and have certain inalienable rights, among which are those of enjoying and defending life and liberty; acquiring, possessing and protecting property and reputation; pursuing and obtaining safety and happiness;

and to keep and bear arms for the defense of their person, family, property, and the state, and for lawful hunting, recreational, and other lawful purposes, which shall not be infringed.

N.D. Const. art. I, § 3.

The North Dakota court stated:

> Ricehill argues that the right to bear arms is absolute. He argues that the language of the provision states that the right to bear arms "shall not be infringed," and that this means that the Legislature may place no limits on the possession of arms. We disagree with such a broad reading of the provision. Instead, we believe our Constitution's protection of the right to keep and bear arms is not absolute; although it prevents the negation of the right to keep and bear arms, that right nevertheless remains subject to reasonable regulation under the State's police power. As the Michigan Supreme Court stated in construing that State's right to bear arms, "regardless of the basis of the right to bear arms, the State, nevertheless, has the police power to reasonably regulate it." *People v. Brown*, 253 Mich. 537, 235 N.W. 245, 246 (1931).
>
> In this case the Legislature prohibited the possession of firearms by persons who have previously committed serious crimes. It is patently reasonable for the Legislature to conclude that it is protecting the public welfare by enacting legislation that keeps firearms out of the hands of people who have shown a disposition to harm others. The Louisiana Supreme Court stated, in rejecting a State constitutional right-to-bear-arms challenge to its prohibition against possession of a firearm by a felon under a police-power rationale:
>
> "It is beyond question that the statute challenged in the instant case was passed in the interest of the public and as an exercise of the police power vested in the legislature. Its purpose is to limit the possession of firearms by persons who, by their past commission of certain specified serious felonies, have demonstrated a dangerous disregard for the law and present a potential threat of further or future criminal activity." *State v. Amos*, 343 So.2d 166, 168

(La. 1977).

415 N.W.2d at 483. The North Dakota court also cited *People v. Blue,* 190 Colo. 95, 544 P.2d 385 (1975), with approval.

We conclude that the statutes in question are reasonable regulations of the right to keep and bear arms and the judgments dismissing the informations were erroneous. Since the defendants have not been placed in jeopardy, the cause in each case is remanded for further proceedings.

EXCEPTIONS SUSTAINED, AND CAUSES REMANDED FOR FURTHER PROCEEDINGS.