REQUESTED BY: Senator Chris Beutler
You have asked whether legislation restricting the purchase and possession of handguns by people convicted of certain misdemeanors would withstand constitutional scrutiny. We conclude that the legislation you anticipate may be susceptible to challenge under the Second Amendment to the United States Constitution; Article I, § 1, of the Nebraska Constitution; the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution; and the Due Process Clauses of theFourteenth Amendment to the United States Constitution and of Article I, § 3, of the Nebraska Constitution.
We understand that the legislation which you anticipate introducing would be patterned after LB546, introduced during the 1995 legislative session. That bill was designed to prohibit the purchase or possession of handguns by individuals convicted of certain misdemeanor offenses: stalking, false imprisonment in the second degree, sexual assault in the third degree, impersonating a peace officer, resisting arrest, obstructing a peace officer, introducing or providing escape implements, carrying a concealed weapon, violation of a protection order, and violation of handgun certificate requirements, as well as the attempt to commit any such offense, and aiding, abetting, procuring, or causing another to commit any such offense. The described offenses are Class I misdemeanors, with the exception of "violation of a protection order" which is a Class II misdemeanor. An attempt to commit a Class I misdemeanor is a Class II misdemeanor; and an attempt to commit a Class II misdemeanor is a Class III misdemeanor. [Neb. Rev. Stat. §28-201 (1995)]. So, the proposed legislation would cover certain Class I misdemeanors, as well as certain Class II and Class III misdemeanors.
The Second Amendment to the United States Constitution provides:
 A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear arms, shall not be infringed.
 Article I, § 1, of the Nebraska Constitution provides in part:
 All persons are by nature free and independent, and have certain inherent and inalienable rights; among these are
 . . . the right to keep and bear arms for security or defense of self, family, home, and others, and for lawful common defense, hunting, recreational use, and all other lawful purposes, and such rights shall not be denied or infringed by the state or any subdivision thereof.
The Fourteenth Amendment to the United States Constitution provides:
 No state shall . . . deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.
 Article I, § 3, of the Nebraska Constitution provides:
 No person shall be deprived of life, liberty, or property, without due process of law.
The federal courts and the Nebraska Supreme Court have recognized that the constitutional right to bear arms is not absolute. See United States v. Miller, 307 U.S. 174 (1939);United States v. Cody, 460 F.2d 34 (8th Cir. 1972); UnitedStates v. Synnes, 438 F.2d 764 (8th Cir. 1971); State v.Comeau, 233 Neb. 907 (1989); and State v. Harrington, 236 Neb. 500
(1990). In Comeau and Harrington, the Nebraska Supreme Court specifically upheld Nebraska's statute prohibiting the possession of firearms by convicted felons [Neb. Rev. Stat. §28-1206] under both the Second Amendment of the United States Constitution, as well as Article I, § 1, of the Nebraska Constitution.
In Comeau, the Nebraska Supreme Court held that "reasonable regulation" of the right to keep and bear arms is not prohibited under the federal or state constitutions. Comeau,233 Neb. at 912, 916. In Comeau and in Harrington, the court concluded that Nebraska's restriction on the possession of firearms by felons was reasonable.
The Equal Protection Clause requires the government to treat similarly situated people alike. City of Cleburne v. CleburneLiving Center, Inc., 473 U.S. 432, 439 (1985). In general, the government need only show a "rational basis" for dissimilar treatment of its citizens. However, "when state laws impinge on personal rights protected by the Constitution" the government's dissimilar treatment of its citizens may be subject to strict scrutiny, and the government may be required to show that its laws are "suitably tailored to serve a compelling state interest." Cleburne, 473 U.S. at 440.
The proposed legislation which would prohibit the purchase or possession of handguns by individuals of selected Class I, Class II, and Class III misdemeanors, may be susceptible to an equal protection challenge, because it does not have a uniform application to all offenders who have been convicted of misdemeanors of those classes. For example, the bill would not apply to an individual who has been convicted of Class I misdemeanor for assault, but would apply to an individual who has been convicted of a Class III misdemeanor for attempting to violate a protection order. Whether the equal protection analysis were conducted under a "rational basis" or a "strict scrutiny" review, the present wording of the statute might fail an equal protection challenge.
The Due Process Clauses of the United States Constitution and of the Nebraska Constitution prohibit governmental action which is "unreasonable, arbitrary, discriminatory, or confiscatory."See, e.g., Blauvelt v. Beck, 162 Neb. 576, 584-87 (1956). The proposed legislation could be deemed arbitrary and unreasonable and fail a substantive due process challenge, as well.
Finally, the bill could be susceptible to challenge on the issue of whether its use of the state's inherent police power constitutes "reasonable regulation" of the right to bear arms under the Second Amendment to the United States Constitution and under Article I, § 1, of the Nebraska Constitution.
On September 30, 1996, the federal Gun Control Act of 1968 was amended, making it illegal for anyone who has been convicted of a misdemeanor crime of domestic violence to possess any firearm or ammunition. [18 U.S.C. § 922(g)(9)]. As the courts analyze constitutional challenges to this new legislation, it will become more apparent whether the legislation you are contemplating would be constitutionally viable.
Sincerely,
 DON STENBERG Attorney General
 Laurie Smith Camp Deputy Attorney General
APPROVED:
Don Stenberg
Attorney General