**Rhonda COVINGTON (87–G–0366), Petitioner,**

v.

**Elaine A. LORD, Superintendent for Bedford Hills Correctional Facility, Respondent.**

**Nos. 97–CV–1576(JBW), 03–MISC–0066(JBW).**

United States District Court, E.D. New York.

July 28, 2003.

Vered Adoni, District Attorney's Office, Kew Gardens, NY, for Respondent.

## JUDGMENT & ORDER

WEINSTEIN, Senior District Judge.

Petitioner was granted a hearing. She was present by telephone.

The petition for a writ of habeas corpus is denied for the reasons stated orally on the record. This memorandum briefly addresses petitioner's claims.

On or about November 14, 1983, late in the evening, petitioner and her estranged husband, Carlton Walker, took a cab ride together. During that ride, Walker told petitioner that he intended to rob the cab driver, and then attempted to do so. In the course of the robbery, the driver wrestled a knife away from Walker, at which point either Walker or petitioner pulled out a gun and shot him. The two then took the driver's money and a CB radio from the cab. Petitioner admitted to all of the above in written, audiotaped and videotaped statements to police and in her testimony at trial, though she denied sharing Walker's larcenous intent and denied shooting the victim. The Appellate Division noted there was evidence at trial that petitioner admitted to having been the shooter and that—based on the range from which the gun was fired—she had fired the fatal shot.

Petitioner was convicted of second degree murder, first degree robbery, and second degree criminal possession of a weapon. She was sentenced to 20 years to life in prison. Her convictions were upheld on appeal. She has initiated numerous state collateral proceedings.

In her habeas petition, she claims (1) that she was denied a public trial when her son was excluded from the courtroom; (2) that her appellate counsel was ineffective for failing to raise on appeal the *Batson*

claim that all black women were improperly removed as prospective jurors; (3) that appellate counsel was ineffective for failing to raise the claim that trial counsel was ineffective for waiving petitioner's appearance before the court on nearly a dozen occasions; and (4) that her rights to due process and a fair trial were abridged by the introduction of material evidence at trial that the prosecution knew to be "false."

Respondent, pursuant to section 2254(b)(3) of Title 28 of the United States Code, has expressly waived the exhaustion requirement for these claims. *See* Memo. of Law in Opposition to Pet. for a Writ of Habeas Corpus, at 77 n. 13.

## I. AEDPA

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may grant a writ of habeas corpus to a state prisoner on a claim that was "adjudicated on the merits" in state court only if it concludes that the adjudication of the claim "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

An "adjudication on the merits" is a "substantive, rather than a procedural, resolution of a federal claim." *Sellan v. Kuhlman*, 261 F.3d 303, 313 (2d Cir.2001) (quoting *Aycox v. Lytle*, 196 F.3d 1174, 1178 (10th Cir.1999)). Under the "contrary to" clause, "a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts."

*Williams v. Taylor*, 529 U.S. 362, 412–13, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000) (O'Connor, J., concurring and writing for the majority in this part). Under the "unreasonable application" clause, "a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413, 120 S.Ct. 1495. "[F]ederal law, as determined by the Supreme Court, may as much be a generalized standard that must be followed, as a bright-line rule designed to effectuate such a standard in a particular context." *Overton v. Newton*, 295 F.3d 270, 278 (2d Cir.2002).

## II. Procedural Bar

■ A federal habeas court may not review a state prisoner's federal claims if those claims were defaulted in state court pursuant to an independent and adequate state procedural rule, "unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750, 111 S.Ct. 2546.

■ If a state court holding contains a plain statement that a claim is procedurally barred then the federal habeas court may not review it, even if the state court also rejected the claim on the merits in the alternative. *See Harris v. Reed*, 489 U.S. 255, 264 n. 10, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989) ("a state court need not fear reaching the merits of a federal claim in an *alternative* holding" so long as it explicitly invokes a state procedural rule as a separate basis for its decision).

■ Ineffective assistance of trial counsel may be cause for a procedural default,

but this claim must be presented to a state court before it can be heard on habeas.

## III. Ineffective Assistance of Trial Counsel

The Counsel Clause of the Sixth Amendment provides that a criminal defendant "shall enjoy the right ... to have the Assistance of Counsel for his defense." U.S. Const. amend. VI. This right to counsel is "the right to *effective* assistance of counsel." *McMann v. Richardson,* 397 U.S. 759, 771 n. 14, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970) (emphasis added). The Supreme Court has explained that in giving meaning to this requirement we must be guided by its purpose—"to ensure a fair trial"—and that therefore the "benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington,* 466 U.S. 668, 686, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In order to prevail on a Sixth Amendment claim, a petitioner must prove both that counsel's representation "fell below an objective standard of reasonableness" measured under "prevailing professional norms," *id.* at 688, 104 S.Ct. 2052, and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *id.* at 694, 104 S.Ct. 2052. *See also United States v. Eyman,* 313 F.3d 741, 743 (2d Cir.2002). A "reasonable probability" is "a probability sufficient to undermine confidence in the outcome." *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052.

■ The performance and prejudice prongs of *Strickland* may be addressed in either order, and "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice ... that course should be followed." *Id.* at 697, 104 S.Ct. 2052. In evaluating the prejudice suffered by a petitioner as a result of counsel's deficient performance, the court looks to the "cumulative weight of error" in order to determine whether the prejudice "reache[s] the constitutional threshold." *Lindstadt v. Keane,* 239 F.3d 191, 202 (2d Cir.2001). The court must also keep in mind that "a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support." *Strickland,* 466 U.S. at 696, 104 S.Ct. 2052. "The result of a [criminal] proceeding can be rendered unreliable, and hence the proceeding itself unfair, even if the errors of counsel cannot be shown by a preponderance of the evidence to have determined the outcome." *Purdy v. Zeldes,* 337 F.3d 253, 260 (2d Cir.2003) (quoting *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052). Ineffective assistance may be demonstrated where counsel performs competently in some respects but not in others. *See Eze v. Senkowski,* 321 F.3d 110, 112 (2d Cir.2003).

There is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland,* 466 U.S. at 689, 104 S.Ct. 2052.

## IV. Ineffective Assistance of Appellate Counsel

■ Although the *Strickland* test was formulated in the context of an ineffective assistance of trial counsel claim, the same test is used with respect to claims of ineffective appellate counsel. *See Claudio v. Scully,* 982 F.2d 798, 803 (2d Cir.1992). Appellate counsel does not have a duty to advance every nonfrivolous argument that could be made, *see Jones v. Barnes,* 463 U.S. 745, 754, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983), but a petitioner may establish that appellate counsel was constitutionally ineffective "if he shows that counsel omit-

ted significant and obvious issues while pursuing issues that were clearly and significantly weaker," *Mayo v. Henderson,* 13 F.3d 528, 533 (2d Cir.1994). Either a federal or a state law claim that was improperly omitted from an appeal may form the basis for an ineffective assistance of appellate counsel claim, "so long as the failure to raise the state ... claim fell outside the wide range of professionally competent assistance." *Id.* (quotations omitted).

## V. *Batson*

"More than a century ago, the [Supreme] Court decided that the State denies a black defendant equal protection of the laws when it puts him on trial before a jury from which members of his race have been purposefully excluded." *Batson v. Kentucky,* 476 U.S. 79, 85, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986) (citing *Strauder v. West Virginia,* 100 U.S. 303, 25 L.Ed. 664 (1880)). In *Batson,* the Court resolved certain evidentiary problems faced by defendants trying to establish racial discrimination in peremptory strikes. It established a three-step burden-shifting framework for the evidentiary inquiry into whether a peremptory challenge is race-based. First, the party challenging the other party's attempted peremptory strike must make a prima facie case that the nonmoving party's peremptory is based on race. *Batson,* 476 U.S. at 96–97, 106 S.Ct. 1712. Second, the nonmoving party must assert a race–neutral reason for the peremptory challenge. *Id.* at 97–98, 106 S.Ct. 1712. The nonmoving party's burden at step two is very low. Under *Purkett v. Elem,* 514 U.S. 765, 115 S.Ct. 1769, 131 L.Ed.2d 834 (1995) (per curiam), although a race-neutral reason must be given, it need not be persuasive or even plausible. *Id.* at 768, 115 S.Ct. 1769. Finally, the court must determine whether the moving party carried the burden of showing by a preponderance of the evidence that the peremp-

tory challenge at issue was based on race. *Batson,* 476 U.S. at 96, 98, 106 S.Ct. 1712.

■ Throughout the three *Batson* steps, the burden remains with the moving party. "It is not until the third step that the persuasiveness of the justification becomes relevant—the step in which the trial court determines whether the opponent of the strike has carried his burden of proving purposeful discrimination." *Purkett,* 514 U.S. at 768, 115 S.Ct. 1769. Typically, the decisive question will be whether counsel's race-neutral explanation for a peremptory challenge should be believed. Because the evidence on this issue is often vague or ambiguous, the best evidence often will be the demeanor of the attorney who exercises the challenge. Evaluation of the attorney's credibility lies "peculiarly within a trial judge's province." *Wainwright v. Witt,* 469 U.S. 412, 428, 105 S.Ct. 844, 83 L.Ed.2d 841 (1985).

## VI. Prosecutorial Misconduct and False Testimony

■ A conviction based on perjured testimony is analyzed under the Due Process Clause of the Fourteenth Amendment. *Napue v. Illinois,* 360 U.S. 264, 269, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959). Under this standard, a conviction must be set aside if "the prosecution knew, or should have known, of the perjury," and "there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." *United States v. Agurs,* 427 U.S. 97, 103, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976). The court of appeals for the Second Circuit has thus far declined to "draw the contours of the phrase 'should have known.'" *Drake v. Portuondo,* 321 F.3d 338, 345 (2d Cir.2003). The court of appeals has decreed that, because the Supreme Court has not clearly established that habeas relief is available in the complete absence of prosecutorial knowledge

of perjury, AEDPA prevents granting of the writ on such grounds. *Id.* at 345 n. 2 (after AEDPA, habeas petitioners can no longer rely on *Sanders v. Sullivan,* 863 F.2d 218 (2d Cir.1988), in which habeas relief was granted in the absence of prosecutorial knowledge of perjury).

## VII. Present Claims

■ Petitioner claims first that she was denied a public trial when her son was excluded from the courtroom. The Sixth and Fourteenth Amendments guarantee an accused criminal a right to a public trial. "The requirement of a public trial is for the benefit of the accused; that the public may see he is fairly dealt with and not unjustly condemned, and that the presence of interested spectators may keep his triers keenly alive to a sense of their responsibility and to the importance of their functions. . . . In addition to ensuring that judge and prosecutor carry out their duties responsibly, a public trial encourages witnesses to come forward and discourages perjury." *Waller v. Georgia,* 467 U.S. 39, 104 S.Ct. 2210, 81 L.Ed.2d 31 (1984) (quotation and footnotes omitted). The right to a public trial is not absolute, however, and it may be limited under appropriate circumstances. Before allowing a courtroom to be closed, the trial court must, *inter alia,* find that an "overriding interest" is likely to be prejudiced in the absence of closure. *Waller,* 467 U.S. at 48, 104 S.Ct. 2210, 81 L.Ed.2d 31 (1984). But where the courtroom is to be only partially closed a movant need only demonstrate a "substantial reason" to justify the partial closure. *Woods v. Kuhlmann,* 977 F.2d 74, 76 (2d Cir.1992) ("a less stringent standard [is] justified because a partial closure does not implicate the same secrecy and fairness concerns that a total closure does").

■ In the present case, the trial court ordered removed petitioner's six year old son from the proceedings, stating:

> I don't think it is wise for a six year old to see his mother on trial for murder and testimony about her possible—. . . . I can't be concerned whether his mother wanted him here or not. He will not be permitted to stay in this courtroom during the trial. I don't think an experience like that should be inflicted on a six year old. And I think the mother who asks for that ought to have second thoughts about that. He won't be permitted in the courtroom during this trial. Not if he is six.

Trial Tr. at 252.

The Appellate Division found the exclusion of the child not to have been an abuse of discretion, noting that the trial court's articulated reason for keeping the six year old out of the courtroom was that it would be in the best interests of the child not to be present while expert testimony and the mother's testimony were given. The remainder of the trial included testimony from the medical examiner and a ballistics expert, as well as the defense case.

The Appellate Division's conclusion that there was no abuse of discretion is not an unreasonable determination of the facts or an unreasonable application of clearly established federal law. Although a defendant has an interest in her family's attendance at trial, the trial court's exclusion of this young boy from a murder trial did not infringe any of the core values that the public trial right protects. The court identified a substantial reason to have the boy removed, required no further fact-finding, and narrowly tailored the closure to include only the boy. The trial court acted properly as *parens patria.*

■ The fact that petitioner's mother chose to leave the courtroom with the child does not warrant a different conclusion.

The state cannot be charged with excluding her. Under the circumstances, there were no alternatives more reasonable than the one chosen. Whether or not this could be characterized as a "trivial" closure that does not even raise Sixth Amendment concerns, *see Peterson v. Williams,* 85 F.3d 39, 42 (2d Cir.1996), the right to a public trial was not abridged.

■ Petitioner, an African–American woman, next claims that her appellate counsel was ineffective for failing to raise on appeal the *Batson* claim that all African–American women were improperly removed as prospective jurors. In fact, the claim at trial was that "black young women" were excluded, not that all "black women were excluded." Tr. 4. Although African–American men were on her jury (one being foreperson), petitioner complains that all "black women" were excluded. The Supreme Court has not heretofore recognized that the combination of race and gender, such as "black women," may establish a cognizable group for *Batson* purposes. *See, e.g., Turner v. Marshall,* 63 F.3d 807, 812 (9th Cir.1995) (noting circuits which hold that gender-race combinations are not cognizable for *Batson* purposes). At the time of petitioner's trial and appeals, such a right was therefore not clearly established by the Supreme Court. *Cf. id.* ("Although the issue of whether African–American men could constitute a *Batson* class likely is worthy of consideration in light of recent holdings that gender as well as race is an impermissible basis for peremptory challenges, we decline to consider this issue because any new rule defining what constitutes a 'cognizable group' could not be applied to [petitioner's] case." (citing *Teague v. Lane,* 489 U.S. 288, 299–300, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989))). Application of *Batson* to African–American women was not recognized in New York state courts until 1995, well after petitioner's appeals were

denied. *See People v. Garcia,* 217 A.D.2d 119, 636 N.Y.S.2d 370 (N.Y.App.Div.1995).

Even assuming habeas relief were available on this *Batson* claim at this time, granting of the writ is not warranted under these circumstances. The trial court explicitly found that the prosecution did not exercise his peremptory challenges for any invalid reasons, stating that "the excuse by the District Attorney as well as defense counsel of the persons who were excused before a jury could be selected, was based either on cause or in this Court's opinion on valid reasons, even though they were peremptory challenges in nature." Trial Tr. at 5. Petitioner presents this court with no reason to find that factual finding—which the judge reiterated at the end of the trial, *see id.* at 726—unreasonable. Appellate counsel was not ineffective for failing to raise this claim along with those she chose to bring to the attention of the Appellate Division.

■ Petitioner urges that appellate counsel was also ineffective for failing to raise the claim that trial counsel was ineffective for waiving petitioner's appearance before the court on nearly a dozen occasions. Among other instances, petitioner was absent at a *Sandoval* hearing, at the reading of several notes sent out from the jury, and at a series of side bar conferences among the court, prosecutor and defense counsel at which legal matters were discussed. A criminal defendant has the right "to be present at all stages of the trial where his absence might frustrate the fairness of the proceedings." *Faretta v. California,* 422 U.S. 806, 819 n. 5, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). Nevertheless, "the right to be present is not absolute: it is triggered only when the defendant's 'presence has a relation, reasonably substantial, to the fulness of his opportunity to defend against the charge.'" *Cohen v. Senkowski,* 290 F.3d 485, 489 (2d Cir. 2002) (quoting *Snyder v. Massachusetts,*

291 U.S. 97, 106–06, 54 S.Ct. 330, 78 L.Ed. 674 (1934)).

Appellate counsel was not ineffective for failing to raise a claim based on her absence from the *Sandoval* hearing for two reasons. First, the New York Court of Appeals did not recognize that state defendants have a right to be present at a Sandoval hearing until 1992, in *People v. Dokes,* 79 N.Y.2d 656, 584 N.Y.S.2d 761, 765, 595 N.E.2d 836 (1992), almost three years after petitioner was denied leave to appeal to the Court of Appeals. At the time trial counsel waived her appearance, therefore, waiving petitioner's presence was not error, and the law at the time of direct appeal would not support a challenge to the waiver.

At any rate, petitioner cannot show prejudice from being absent at the hearing because the hearing turned out favorably for her on the *Sandoval* issue discussed there: The prosecutor was not permitted to inquire into petitioner's previous contact with the criminal justice system.

■ Appellate counsel also was not ineffective for failing to raise the waiver claim with respect to the sidebars or legal conferences in chambers. Even if these conferences were significant parts of the proceedings, petitioner has not demonstrated any way in which she was harmed by not being present; she "does not claim that [she] would have added anything to the discussion or that [she] was otherwise prejudiced." *United States v. Doe,* 964 F.2d 157, 159 (2d Cir.1992); *see also Yonamine v. Artuz,* No. 00–2028, 2000 WL 1593300, at *1–2, 2000 U.S.App. LEXIS 26831, at *4 (2d Cir. Oct. 18, 2000) (unpublished) (observing that there is no clearly established federal law guaranteeing a defendant the right of presence at a chambers conference between the trial judge and counsel at which legal issues are discussed).

These were not "off the record" bench and chambers conferences. A full transcript was available. Yet, the *Sandoval* hearing was a part of the criminal proceeding requiring evidence. A defendant has a right to be present at all parts of the proceeding. Exclusion from any portion of the trial is undesirable and may lead to unnecessary errors by the trial court. It will certainly frustrate many defendants who want to know what is happening in their cases.

No prejudice seems apparent in the instant case. Appellate counsel was not ineffective for failing to raise this claim, and granting of the writ is not warranted on this ground.

■ Finally, petitioner claims that her rights to due process and a fair trial were abridged by the introduction of material evidence at trial that the prosecution knew to be "false." Petitioner protests here about the prosecution's use of her own statement to police. This claim was procedurally barred by the trial court on section 440.10 review and may not be entertained by this court. At any rate, the claim is without merit. The allegedly false evidence adduced at trial were petitioner's own statements and testimony. Petitioner provides an elaborate if somewhat confusing story explaining her reason for lying to police, the gist of which is that she told police that her boyfriend killed the cab driver because she feared that her boyfriend was planning to harm or kill her over some of his cocaine that he felt she had taken. Petitioner does not show any way in which the prosecution could have divined this elaborate reason for her having lied to police. She also does not explain why she waited until after her appeals were complete to bring her lies to anyone's attention. Her claim is patently meritless.

There is no issue of innocence.

## VIII.  Conclusion

The petition for a writ of habeas corpus is dismissed.  A certificate of appealability is granted with respect to her claim that appellate counsel was ineffective for failing to raise the claim that trial counsel was ineffective for waiving petitioner's appearance before the court on nearly a dozen occasions.

A further certificate of appealability may be sought by petitioner.

A notice of appeal shall be filed on her behalf.

SO ORDERED.