The summaries of the Colorado Court of Appeals published opinions
constitute no part of the opinion of the division but have been prepared by
the division for the convenience of the reader. The summaries may not be
cited or relied upon as they are not the official language of the division.
Any discrepancy between the language in the summary and in the opinion
should be resolved in favor of the language in the opinion.

SUMMARY
May 31, 2018

## 2018COA77

## No. 15CA1239, People in Interest of G.B. — Juvenile Court — Delinquency

In this juvenile delinquency proceeding, a division of the court of appeals holds that the trial court committed structural error by excluding from two days of trial all spectators under age eighteen. The closure did not satisfy the four requirements laid out in *Waller v. Georgia*, 467 U.S. 39, 49 (1984).

COLORADO COURT OF APPEALS                                    **2018COA77**

Court of Appeals No. 15CA1239
Weld County District Court No. 14JD159
Honorable Thomas J. Quammen, Judge

The People of the State of Colorado,

Petitioner-Appellee,

In the Interest of G.B.,

Juvenile-Appellant.

JUDGMENT REVERSED AND CASE
REMANDED WITH DIRECTIONS

Division III
Opinion by JUDGE WEBB
Richman and Fox, JJ., concur

Announced May 31, 2018

Cynthia H. Coffman, Attorney General, Jacob R. Lofgren, Assistant Attorney
General, Denver, Colorado, for Petitioner-Appellee

Douglas K. Wilson, Colorado State Public Defender, Ryann S. Hardman,
Deputy State Public Defender, Denver, Colorado, for Juvenile-Appellant

¶ 1       In this juvenile delinquency proceeding, a jury convicted G.B., age sixteen, of offenses that would, if committed by an adult, constitute felony sexual assault against the victim, age fifteen.  The trial court adjudicated G.B. delinquent and sentenced him to the custody of the Division of Youth Corrections.

¶ 2       On appeal, he challenges the sufficiency of the evidence that he knew the victim was "incapable of appraising the nature of [her] conduct."  He also contends, among other things, that the trial court violated his right to a public trial by excluding, over objection, all spectators during his cross-examination of the sexual assault nurse examiner (SANE), and by excluding all spectators under age eighteen from a significant portion of the trial.  The Attorney General concedes that G.B. preserved the sufficiency and the under-eighteen courtroom closure issues.

¶ 3       We conclude that the evidence was sufficient.  Resolving a novel question in Colorado, we further conclude that because the trial court committed structural error by excluding all spectators under age eighteen from a significant portion of the trial, the judgment must be reversed.  The case is remanded for a new trial.

Because we cannot predict whether, or if so how, G.B.'s other issues may arise on retrial, we decline to address them.

## I. The Prosecution Presented Sufficient Evidence for a Reasonable Jury to Conclude that G.B. Knew the Victim Was "Incapable of Appraising the Nature of [Her] Conduct"

¶ 4    We begin with this contention because if G.B. is entitled to reversal of his adjudication "due to insufficient evidence, the guarantees against double jeopardy in the United States and Colorado Constitutions may preclude retrial." *People v. Marciano*, 2014 COA 92M-2, ¶ 42.

### A. Background

¶ 5    According to the prosecution's evidence, the victim decided to sneak out of her parents' Greeley home. At a friend's house, she contacted G.B., who was a fellow student at her high school, using Facebook. G.B., two other students at the high school, the older brother of one of them, and the victim drove to a party in Evans. They all drank beer and smoked marijuana.

¶ 6    The victim testified that when they left the party, she was having trouble walking. G.B. and one of the boys helped her to a car. They drove to meet Ignacio Guzman, an adult, and returned to the party in his four-door truck. She and G.B. stayed in the truck,

2

continuing to drink and smoke marijuana. According to the victim, G.B. forced her to have vaginal intercourse in the truck. The jury acquitted G.B. of this charge.

¶ 7     G.B., the victim, the other three boys, and Guzman left the party together. They continued to drink and smoke marijuana. Eventually, they went to Guzman's house in Johnstown. Testimony concerning what happened after that was conflicting.

¶ 8     The victim testified that on arriving at Guzman's house, she had trouble walking. She went into the bathroom, then rejoined the others in the living room. The group continued drinking and smoking marijuana. She was dizzy and having trouble standing up.

¶ 9     According to the victim, two of the boys were "helping move myself" to the bathroom. Although she was "conscious," she felt that she could not do anything for herself. All the boys and Guzman joined her in the bathroom. She testified that Guzman forced her to perform oral sex on each of the boys. Then while someone held her hands and ankles, each of the boys and Guzman had vaginal intercourse with her. She told them to stop.

¶ 10     The victim testified further that the boys and Guzman left the bathroom and then returned one by one, each of them again having

3

vaginal intercourse with her. When G.B. was in the bathroom with her, she told him "no" and that she was in pain. Eventually, she cleaned up her blood from the bathroom floor, returned to the living room, and fell asleep.

¶ 11 One of the boys testified that Guzman told the victim to go to the bathroom, but she walked there by herself. She was "high and drunk."

¶ 12 Guzman testified that when the group arrived at his house, the victim was flirting, dancing, rubbing on the boys, and appeared to be affected by drugs. He said that in the bathroom, she acted like she wanted to have sex, no one forced her to give G.B. oral sex, and she rejected his attempt to have anal sex. Then she suggested that she have sex with them one at a time.

## B. Law

¶ 13 An appellate court reviews the record de novo to determine if it includes sufficient evidence to support the convictions. *People v. Douglas*, 2015 COA 155, ¶ 8. In doing so, "we determine whether the evidence, viewed as a whole and in the light most favorable to the prosecution, is both 'substantial and sufficient' to support the

4

defendant's guilt beyond a reasonable doubt." *Id.* (quoting *Dempsey v. People*, 117 P.3d 800, 807 (Colo. 2005)).

¶ 14    G.B. was charged under section 18-3-402(1)(b), C.R.S. 2017, which provides that a person commits sexual assault if he "knowingly inflicts sexual intrusion or sexual penetration on a victim" and "knows that the victim is incapable of appraising the nature of the victim's conduct." The statute does not define "incapable of appraising the nature of the victim's conduct." But the supreme court has said that it "addresses the situation in which a victim is cognitively unable to appreciate her conduct; in other words, it involves a victim who simply cannot understand what she is doing." *Platt v. People*, 201 P.3d 545, 548 (Colo. 2009).

### C.  Analysis

¶ 15    G.B. argues that unlike many other cases involving section 18-3-402(1)(b), here the victim "was not mentally retarded, did not have an extremely simplistic understanding of sexual intercourse, was not asleep, and was not passed out or blacked out." G.B. continues that "[a]lthough [the victim] may have been intoxicated to some degree," she testified that she "knew what was going on."

¶ 16    This argument, however, ignores other evidence supporting the adjudication.  For example, the victim testified, "I felt as if I couldn't do anything for myself."  She explained, "I could feel myself moving . . . but it was hard for me to lift, like, my arm or to be able to walk on my own."  She also testified that she did not remember certain things about that night until she started having nightmares and flashbacks months later.  And several witnesses testified about the victim's alcohol and drug use during the evening.

¶ 17    Our role is not to sit as a thirteenth juror and reweigh the evidence heard by the jury.  *People v. Bertrand*, 2014 COA 142, ¶ 15 ("It was within the sole province of the jury to determine the weight of the evidence and to resolve any conflicts and inconsistencies in witness testimony.").  Instead, viewing the evidence in a light most favorable to the prosecution, we conclude that it is sufficient to support a conclusion by a reasonable jury that G.B. knew the victim was incapable of appraising the nature of her conduct.

## II.  The Trial Court Violated G.B.'s Right to a Public Trial

¶ 18    G.B. next contends the trial court violated his right to a public trial by excluding all spectators from his cross-examination of the SANE and all spectators under age eighteen from a significant

6

portion of the trial. He asserts that because this error is structural, we must reverse the adjudication and remand for a new trial. We conclude that exclusion of all spectators under age eighteen from a significant portion of the trial was a structural error that requires reversal. Based on this conclusion, we need not address the cross-examination issue.

## A. Relevant Facts

¶ 19    During the prosecution's case, just before the paramedics who treated the victim testified, the court asked counsel, "What are they going to talk about?" The court explained to counsel "there[ are] children in here, and I will excuse them when it starts getting down to the nitty-gritty stuff." Then the following discussion occurred:

> THE COURT: Do you know who these children are back here?
>
> PROSECUTOR: They're with [G.B.], I believe.
>
> THE COURT: I'm going to ask them to leave. I don't think it's good for children to be listening to this.
>
> DEFENSE COUNSEL: I understand the Court's position. I'll just pose an objection on [G.B.'s] right to a speedy and public trial.
>
> THE COURT: Well, I agree with that. I have to also counter — I also have to balance that with topics that I just don't think are in the best

interest of a child to hear. So I respect that. But I'm going to . . . ask the children — do you know what their ages are?

DEFENSE COUNSEL: I don't, Judge. I'm not actually sure who they are.

THE COURT: Okay. Well . . . I'm going to ask that the children be excused when we have testimony about sexual things. I know that there is an objection on the basis of a public trial, but I've got to balance that. Having a little child hear this type of stuff, I just . . . think it's harmful for a child to hear this, so I'm going to have them leave . . . .

¶ 20    The next day, the parties discussed closing the courtroom to the general public during the presentation of photographs of the victim's genitalia. Although G.B. did not object to this narrow closure, he reiterated his prior objection to closing the courtroom and said "our objection stands there. We would still like the courtroom to be open and public." After that, the trial court said:

And I also, in this particular case, am excluding children from the gallery. I don't do that because the Court is concerned about whether they are going to be talking or — that is not the Court's concern. The Court's concern is that it is not in the best interests of a young child to be hearing this type of evidence. And I just don't think that it's good for a child to hear this. Their parents may disagree, but I disagree with them if they disagree with me on that. So . . . I have

8

directed the courtroom bailiff from —
excluding children from the courtroom for that
purpose.

The courtroom deputy asked the trial court, "Is there an age limit that you want me . . . ." The court responded, "No. If they are children under 18, then they should — probably should not be here."

¶ 21    The record does not indicate whether the courtroom was ever reopened to spectators under age eighteen. The closure occurred on the seventh day of the trial. Further evidence was presented over the next two days. Counsel made closing arguments on day nine.

### B. Standard of Review

¶ 22    "A trial court's decision to close the courtroom presents a mixed question of law and fact." *People v. Hassen,* 2015 CO 49, ¶ 5. We defer to the trial court's findings of fact if supported by the record, but review its ultimate legal conclusion de novo. *Id.*

### C. Law

¶ 23    The United States and Colorado Constitutions guarantee a criminal defendant the right to a public trial. U.S. Const. amends. VI, XIV; Colo. Const. art. II, § 16. Violation of this right is a

9

structural error requiring reversal without any showing of prejudice. *See, e.g.*, *Neder v. United States*, 527 U.S. 1, 8 (1999); *Waller v. Georgia*, 467 U.S. 39, 49 (1984). Still, this right is not absolute; it may give way "to other rights or interests, such as the defendant's right to a fair trial or the government's interest in inhibiting disclosure of sensitive information." *Waller*, 467 U.S. at 45; *Anderson v. People*, 176 Colo. 224, 226, 490 P.2d 47, 48 (1971).

¶ 24    To close a courtroom without violating a defendant's public trial right, four requirements must be met. First, "the party seeking to close the [proceeding] must advance an overriding interest that is likely to be prejudiced." *Hassen*, ¶ 9 (quoting *Waller*, 467 U.S. at 48). Second, "the closure must be no broader than necessary to protect that interest." *Id.* (quoting *Waller*, 467 U.S. at 48). Third, "the trial court must consider reasonable alternatives to closing the proceeding." *Id.* (quoting *Waller*, 467 U.S. at 48). And fourth, the trial court "must make findings adequate to support the closure." *Id.* (quoting *Waller*, 467 U.S. at 48).

## D. Analysis

### 1. The First *Waller* Requirement — Overriding Interest

¶ 25    The trial court closed the courtroom to spectators under age eighteen because it was "not in the best interests of a young child to be hearing this type of evidence." G.B. argues that under *Waller*, this reason did not constitute an "overriding interest."

¶ 26    G.B. relies on *Thompson v. People,* 156 Colo. 416, 426-27, 399 P.2d 776, 781-82 (1965), where our supreme court said:

> [W]hatever may have been the view in an
> earlier and more formally modest age, we think
> that the franker and more realistic attitude of
> the present day toward matters of sex
> precludes a determination that all members of
> the public, the mature and experienced as well
> as the immature and impressionable, may
> reasonably be excluded from the trial of a
> sexual offense upon the ground of public
> morals.

Although *Thompson* referred to the "immature and impressionable," the closure there involved all of the general public — not just children. *Id.* So, while we must follow the decisions of our supreme court, *Thompson* does not resolve the issue before us.

¶ 27    And unlike in *Thompson,* courts in other jurisdictions have recognized "[i]t is everywhere conceded that minors deserve special

11

consideration and may be excluded from the courtroom in trials of a salacious nature." *State v. Schmit*, 139 N.W.2d 800, 804 (Minn. 1966); *see also Marshall v. State*, 258 N.E.2d 628, 630 (Ind. 1970) ("In the trial for a sex offense . . . many courts have held that, because of the nature of the offense and the type of evidence which will be elicited, youthful spectators may be excluded."); 6 Wayne R. LaFave et al., *Criminal Procedure* § 24.1(b), Westlaw (4th ed. database updated Dec. 2017) ("Earlier cases took the view that in the trial of sex offenses the general public, or at least youthful spectators, could be excluded from the courtroom to protect public morals.").

¶ 28     In disputing whether an overriding interest is at stake, the Attorney General urges us to follow the standard mentioned in *People v. Whitman*, 205 P.3d 371, 379 (Colo. App. 2007), that where "the courtroom is only partially closed to the public" — as here — "there need only be a '"substantial" interest, rather than a "compelling" one.'" *Id.* (quoting *United States v. Galloway*, 937 F.2d 542, 546 (10th Cir. 1991)). According to the Attorney General,

excluding children from the courtroom based on age-inappropriate evidence constitutes at least a substantial interest.[1]

¶ 29     G.B. responds that excluding such spectators does not constitute even a substantial interest. He points out that children under age eighteen may consent to sexual conduct under section 18-3-402(1)(e).

¶ 30     Be that as it may, no Colorado court has embraced the substantial interest standard for partial closures. *See Whitman*, 205 P.3d at 379 (explaining that the reason for the closure "satisfies either the overriding or substantial interest standards"). The Supreme Court has not addressed this question and other jurisdictions are divided. *Compare Galloway*, 937 F.2d at 546 ("[A] different standard applies where the courtroom is only partially closed to the public . . . ."), *with People v. Jones*, 750 N.E.2d 524, 529 (N.Y. 2001) ("We believe that there is no need to adopt such an articulation of the *Waller* standard since *Waller* already

---

[1] In arguing that a substantial interest exists, the Attorney General relies on section 19-1-106(2), C.R.S. 2017, and section 19-2-110, C.R.S. 2017, both of which allow the closing of a juvenile trial if it is in the best interests of the juvenile or the community. But here the trial court's findings focused on the interests of "child attendees" at trial, not the best interests of G.B. or the community.

contemplates a balancing of competing interests in closure decisions.").

¶ 31     On this record, we need not decide whether the substantial interest standard applies. *See Developmental Pathways v. Ritter*, 178 P.3d 524, 535 (Colo. 2008) ("[T]he principle of judicial restraint requires us to 'avoid reaching constitutional questions in advance of the necessity of deciding them.'" (quoting *Lyng v. Nw. Indian Cemetery Protective Ass'n*, 485 U.S. 439, 445 (1988))). Regardless of whether excluding children is a compelling interest, only a substantial interest, or something less, the trial court's closure did not satisfy the second and third *Waller* requirements.[2] *See United States v. Simmons*, 797 F.3d 409, 414 (6th Cir. 2015) (Courts "that have distinguished between partial closures and total closures modify the *Waller* test so that the 'overriding interest' requirement is replaced by requiring a showing of a 'substantial reason' for a partial closure, *but the other three factors remain the same.*") (emphasis added); *see also Presley v. Georgia*, 558 U.S. 209, 216 (2010) (per curiam) ("[E]ven assuming, arguendo, that the trial

---

[2] The Attorney General does not dispute that even under the substantial interest standard, the remaining three *Waller* requirements must still be met.

14

court had an overriding interest in closing [the courtroom], it was still incumbent upon it to consider all reasonable alternatives to closure. It did not, and that is all this Court needs to decide.").

2. The Second *Waller* Requirement — No Broader Than Necessary

¶ 32    G.B. argues that closing the courtroom to all spectators under age eighteen was broader than necessary. We agree.

¶ 33    Under *Waller*, a courtroom closure may not be any broader than necessary to protect the overriding interest. In other words, the closure must strike "'a careful balance of interests' that results in the exclusion of only those persons" necessary to protect the overriding interest. *State v. Hood*, 320 P.3d 522, 526 (N.M. Ct. App. 2014) (quoting *State v. Turrietta*, 308 P.3d 964, 972 (N.M. 2013)).

¶ 34    Under this requirement, some courts addressing courtroom closures excluding all children have warned that such an "approach may be carried too far." *Marshall*, 258 N.E.2d at 630. *Reynolds v. State*, 126 So. 2d 497 (Ala. Ct. App. 1961), is illustrative.

¶ 35    There, the court held that because excluding from the courtroom all children under age eighteen went beyond excluding merely "children of tender age," the closure violated the defendant's right to public trial. *Id.* at 498. The court explained:

15

> [W]e do not think that the exclusion of "children of tender age" can be deemed to include persons of the ages excluded from the trial by the court below, that is, "children of eighteen years or less." Persons of eighteen years of age can hardly be deemed children of "tender age." Males of that age are subject to military service. In some states persons of that age can vote. In this State a female of eighteen years of age may marry without her parent's consent.

*Id.*; *see also McConnaughey v. United States*, 804 A.2d 334, 342 n.10 (D.C. 2002) ("A barring of all children, rather than a select few, might present a closer constitutional question . . . .").

¶ 36    In contrast, where a trial court imposes a narrow closure related to only young children, the public trial right is not violated. *See Covington v. Lord*, 275 F. Supp. 2d 352, 358 (E.D.N.Y. 2003) (A trial court's exclusion of one "young boy from a murder trial did not infringe any of the core values that the public trial right protects."), *aff'd*, 111 F. App'x 647 (2d Cir. 2004); *see also Davis v. Walsh*, No. CV 08-4659(PKC), 2015 WL 1809048, at *8 (E.D.N.Y. Apr. 21, 2015) ("Only the [four-year-old] child was excluded, so the closure was no broader than necessary.").

¶ 37    Recall that here the courtroom closure was based on the trial court's desire to prevent "a young child [from] hearing this type of

evidence." Yet, the closure went well beyond "a young child" and excluded all spectators under age eighteen. Such a broad closure was especially problematic given the ages of G.B., the victim, and many trial witnesses, all of whom were under age eighteen.

¶ 38 The trial court's closure could have prevented peers of G.B. and the victim from attending the trial, undermining two goals served by the public trial right: to encourage witnesses to come forward and to discourage perjury. *Hassen*, ¶ 15; *see Gannett Co. v. DePasquale*, 443 U.S. 368, 383 (1979) ("Openness in court proceedings may improve the quality of testimony, induce unknown witnesses to come forward with relevant testimony, [and] cause all trial participants to perform their duties more conscientiously . . . ."). In contrast, young children would not have had a similar interest in the proceeding. *See Sobin v. United States*, 606 A.2d 1029, 1033-34 (D.C. 1992) (Excluding "two children of tender years . . . in no way undermined the public policy goals identified above which are advanced by the requirement that criminal proceedings be open.").

¶ 39 For these reasons, we conclude that closing the courtroom to all spectators under age eighteen — for the remainder of the trial —

was broader than necessary to achieve the trial court's legitimate interest in protecting young children from exposure to age-inappropriate evidence. This conclusion brings us to whether the trial court considered any reasonable alternatives.

3. The Third *Waller* Requirement — Reasonable Alternatives

¶ 40 G.B. argues that the trial court failed to consider reasonable alternatives when it closed the courtroom to all spectators under age eighteen. Again, we agree.

¶ 41 Under *Waller*, the trial court was required to consider reasonable alternatives to the closure "even when they are not offered by the parties." *Presley*, 558 U.S. at 214; *see Commonwealth v. Maldonado*, 2 N.E.3d 145, 151 (Mass. 2014) ("Before ordering any closure of a court room, whether full or partial, a judge 'must consider reasonable alternatives to closing the proceeding . . . .'" (quoting *Waller*, 467 U.S. at 48)). This is so because "[t]rial courts are obligated to take every reasonable measure to accommodate public attendance at criminal trials." *Presley*, 558 U.S. at 215.

¶ 42 The Attorney General responds that the court must have considered reasonable alternatives because it only ordered a partial

closure of the courtroom rather than a total closure (other than as to cross-examination of the SANE), and only during part rather than all of the trial. This response misses the mark in two ways.

¶ 43 First, the record does not show that the trial court considered any alternatives to the exclusion of all spectators under age eighteen. *See People v. Richards*, 795 P.2d 1343, 1346 (Colo. App. 1989) ("In this case, there is no indication in the record that the court adequately considered all of these factors. Of particular importance is the fact that the trial court failed to consider the other reasonable and less drastic alternatives available . . . .").

¶ 44 Second, even if "instituting a partial closure might, in some cases, satisfy a court's obligation to consider reasonable alternatives, it might not satisfy that obligation in other situations." *State v. Tucker*, 290 P.3d 1248, 1258 (Ariz. Ct. App. 2012). Specifically, "if the partial closure under consideration is not sufficiently limited to comply with *Waller*'s second requirement, the court must consider other alternatives." *Id.* And as we have concluded above, the closure was not narrowly tailored.

¶ 45 For example, G.B. asserts that "[i]f the court was concerned about young children hearing the evidence, [it] could have

considered excluding only children under [age] twelve or thirteen."
After all, "[c]hildren today are more 'streetwise' and knowledgeable
than children were even a few decades ago." *Belcher v. Charleston
Area Med. Ctr.*, 422 S.E.2d 827, 837 n.12 (W. Va. 1992) (citation
omitted). The court could have considered an exception for
spectators who were identified as G.B.'s relatives, regardless of their
ages. *See People v. Richardson*, 744 N.Y.S.2d 407, 407 (N.Y. App.
Div. 2002) ("The trial court's exclusion of defendant's children, ages
eight and nine, from the courtroom violated defendant's right to a
public trial . . . ."). And it could have exempted from the exclusion
persons under age eighteen who were students in the high school
that G.B. and the victim attended, a community that had a
particular "interest in seeing that offenders are brought to account."
*United States v. Cojab*, 996 F.2d 1404, 1407 (2d Cir. 1993); *see also
In re J.R.L.*, 738 S.E.2d 144, 148 (Ga. Ct. App. 2013) (recognizing
"the community's need for a full and public trial").

¶ 46    Because the trial court did not expressly consider any of these
less drastic alternatives, the court failed to meet the third *Waller*
requirement.

¶ 47    In the end, based on the second and third *Waller* requirements, we conclude that the trial court erred in closing the courtroom to all spectators under age eighteen.  In saying this much, we take care to explain what we do not mean to say.  Trial courts have a legitimate concern in protecting young children from exposure to salacious evidence that is potentially disturbing to them.  But balancing that concern against the public trial right based on a bright-line test of excluding all spectators under age eighteen will rarely survive constitutional scrutiny.

### 4.  Remedy

¶ 48    The Attorney General asserts that even if the trial court failed to satisfy one or more of the *Waller* requirements, "to the extent that it is not clear how long the children were excluded for, this Court may remand for any perceived deficiency in the record rather than reversing under structural error."  We decline to remand.

¶ 49    Only one Colorado case has remanded for findings on this issue.  *People v. Thomas*, 832 P.2d 990, 993 (Colo. App. 1991).  In *Thomas*, whether closure even occurred was unclear, and if it did, the closure may have been so "momentary and fleeting" as to be de minimis.  *Id.*

21

¶ 50 Unlike in *Thomas*, here the record is clear that the closure was neither momentary nor fleeting. The trial court told the parties that it was excluding spectators under age eighteen two days before closing arguments. *See Hassen*, ¶ 16 ("Given that the testimony of the two undercover officers totaled roughly twenty-seven pages in the trial transcript, we cannot conclude that the multiple closures were 'extremely short.'").

¶ 51 Nor was G.B. required to prove that specific spectators under age eighteen attempted to enter the courtroom after the trial court's order, but were excluded. *See Lilly v. State*, 365 S.W.3d 321, 331 (Tex. Crim. App. 2012) ("When determining whether a defendant has proved that his trial was closed to the public, the focus is not on whether the defendant can show that someone was actually excluded. Rather, a reviewing court must look to the totality of the evidence and determine whether the trial court fulfilled its obligation 'to take every reasonable measure to accommodate public attendance at criminal trials.'" (quoting *Presley*, 558 U.S. at 215)).

¶ 52 As well, remand would waste judicial resources. By any fair account, the closure was not narrowly tailored. The trial court could not now find otherwise. Nor did the trial court even consider

22

any alternatives.  So, whatever alternatives the court might belatedly recognize on remand would not shore up its earlier decision.  *See Smith v. State*, 213 So. 3d 327, 338 n.2 (Ala. Crim. App. 2011) ("Although an appellate court may, in some circumstances, remand a cause . . . to supplement the record with specific findings in compliance with *Waller*, such a remand is not necessary in this case.").

### III.  Conclusion

¶ 53     The judgment is reversed and the case is remanded for a new trial.

JUDGE RICHMAN and JUDGE FOX concur.